## Case No. 15,835.

### UNITED STATES v. MUNROE et al.

[5 Mason, 572.] [1]

Circuit Court, D. Massachusetts. Oct. Term,. 1830.

INSOLVENCY—GOVERNMENT PRIORITY—ASSIGNMENT—EQUITY—REFORM OF INSTRUMENTS.

1. To entitle the United States to a priority of payment, under the 65th section of the collection act of 1799, c. 128 [1 Story's Laws, 630 (1 Stat. 676, c. 22)], out of the funds in the hands of assignees, there must be a general assignment by the debtor of all his property. A partial assignment of a portion, however large, without fraud, is not sufficient.

2. In what cases a court of equity will reform a written instrument, upon the ground of mistake. The mistake must be made out by the clearest and most unequivocal evidence.

[Cited in Babcock v. Smith, 22 Pick. 69; Shepard v. Shepard, 36 Mich. 179; Southard v. Curley, 134 N. Y. 152, 31 N. E. 331.]

3. Semble, that the court would not reform it to the prejudice of bona fide purchasers without notice.

This was a bill in equity, brought by the United States against the defendants [Washington Munroe and Elijah Loring] as assignees of Samuel Langton, to enforce their right of priority of payment of debts out of the effects of Langton, assigned to the defendants for the payment of his creditors. The cause was brought to a hearing upon the bill, answers and evidence.

Mr. Dunlap, Dist. Atty.

The celebrated rule of reasoning, laid down by Lord Bacon in his Reading upon the Statute of Uses, may well be adopted in this case. He says, "The nature of an use is best discerned by considering what it is not, and then what it is; for it is the nature of all human science and knowledge to proceed most safely, by negatives and exclusives, to what is affirmative and inclusive." So here it would be better ascertained what cases were included within the statutes giving a priority to the United States. by first considering what cases were excluded from these statutes. The cases decided against the priority of the United States, are, where mortgages and pledges of certain specified property, partial conveyances in the course of business, as contradistinguished from general assignments, have been upheld against the United States. In the case of U. S. v. Hoe, 3 Cranch [7 U. S.] 91, a mortgage of part of the debtor's property was upheld, and the court there say, that "there must be such a general divestment of property as would be equivalent to insolvency in its technical sense," to entitle the United States to a priority. In Bartlett v. Prince, 5 Cranch [9 U. S.] 431, the court consider the words "insolvency" and "bankruptcy" as "synonymous," and in Conard v. Atlantic Ins. Co., 1 Pet. [26 U. S.] 439, the court say, "Insolvency, in the sense of the statute, relates

1 [Reported by William P. Mason, Esq.]

to such a general divestment of property, as would, in fact, be equivalent to insolvency, in its technical sense." In U. S. v. Clark [Case No. 14,807], the court say, that the omission in an assignment of a part "to evade the statute," is not the only illustration, and that the assignment must be "the assignment of all, as contradistinguished from a partial assignment." In 1 Cooke, Bankr. Law, 102, the distinction is taken between partial assignments which are in the course of fair trade, and those which are considered general and technically total, though there may be omissions of some small portions of a debtor's property. In the latter case, the exceptions or reservations do not prevent the assignment from being considered general. From these authorities it is inferred and contended, that where, instead of a legal insolvency, a party makes a voluntary bankruptcy, and delivers over and assigns the bulk of his property to assignees, to secure the payment of his debts, the assignment is a general, as contradistinguished from .a partial one, although there may have been some reservations by the debtor, either with a fraudulent design against the United States, or creditors, or from accident. In most cases of assignments, there is a reservation of household furniture. or a small allowance to the insolvent debtor; and if such reservations, as one of a library of books, or a little family plate, and things of that sort, can prevent such assignments from being considered general, the priority of the United States in those states where there are no bankrupt laws, is in fact destroyed.

Mr. Fletcher, for defendants, è contra.

STORY, Circuit Justice. The present bill seeks payment of certain judgment debts due to the United States upon custom-house bonds, out of the effects of Samuel Langton, assigned to the defendants, Munroe and Loring. The collection act of 1799, c. 128, § 65 [1 Story's Laws, 630 (1 Stat. 676, c. 22)], gives a priority of payment to the United States in certain cases of insolvency, and among others, in cases "in which a debtor, not having sufficient property to pay all his or her debts, shall have made a voluntary assignment thereof for the benefit of his or her creditors" The bill asserts two grounds, upon which the United States may maintain their claim: (1) That there was in this case, a general assignment by Langton of all his property; (2) that it was the intention of all the parties to the assignment, that the clause in the assignment, providing for a priority of payment upon custom-house bonds due to the United States, should apply to all the bonds of Langton then owing to the custom-house, and not, as the terms of the assignment purport, to those bonds only, upon which Munroe was surety.

In cases, where the United States seek to enforce such a priority upon the ground of a general assignment, it is necessary, that the bill should expressly aver, that the assignment does cover and convey all the property of the debtor. If the assignment be general in its words, so as to include all his property, the allegation may be in general terms referring to the assignment. But where, as in the present case, the assignment purports upon its face to convey specific property only, and not to be universal in its operation, it is necessary, that there should be a direct averment in the bill, that the assignment did in fact, though not in form, include all the debtor's property. so as to operate virtually as a general assignment. If any portion be omitted fraudulently to evade the statute, or unintentionally and by mistake, when the object was a general assignment, in each of these cases the bill should include an averment to meet the case, and obviate the difficulty. So in relation to the case of an asserted mistake in the language of the instrument, differing from the intention of the parties, if the bill seeks to correct that mistake, and reform the instrument, and obtain the consequent relief, it is not sufficient to allege generally, that the intention was different; but there must be an express averment, that the instrument, as existing, differs from the intention of the parties, stating the particulars; and the bill must conclude with a prayer for the correction of the mistake, and a decree according to the reformed instrument. It might be questioned, whether upon a critical examination the averments are so perfectly explicit in this bill, as to preclude all doubt. However, I throw out these observations rather for consideration in other cases, as the parties have taken no objection, and the cause has been argued upon the merits.

There is another question as to parties, whether all the proper parties are now before the court. Langton is no party to the bill, though he has, in writing, expressed a willingness to be made one, and to submit to any decree made by the court. But he is certainly the primary debtor, and might, if he pleased, contest the debts due to the United States, or prove a satisfaction of them. He is certainly, therefore, a proper party for the protection of his own interests, as well as those of the assignees.

But the answer of Munroe discloses another important fact; and that is, that since the assignment was made, he has himself become insolvent, and has assigned to certain persons all his property, including all that passed for his benefit under the assignment of Langton; and his (Munroe's) assignees are not parties to the bill. Now, in point of fact, it appears, that Munroe was the principal creditor of Langton; that he was also indorser and surety for a large amount; and the assignment of Langton provides for the entire payment of all debts due to, and liabilities of Munroe, before the satisfaction of any other debts. The answers also establish that the proceeds of the property under the assignment fall far

short of indemnifying Munroe for these debts and liabilities. The other assignee, Loring, is but nominally interested. If, therefore, the object of the present bill be (as it in fact is) to reach the effects of Langton in the hands of the assignees of Munroe, they ought to be made parties to the bill. If the object were only to charge Munroe and Loring personally (the latter does not appear to have any part of the property in his hands), and to get a decree against them for the amount, it might be otherwise. But as to Munroe, a personal decree would be useless, for he is already insolvent.

The questions, however, which the parties before the court are most anxious to dispose of, if decided in favour of the defendants, will render the further consideration of the question of parties unnecessary. How far, then, are the grounds of the bill maintained, in point of fact and evidence? In the first place, was this the case of a general assignment? The doctrine of the supreme court of the United States, is, that no assignment is within the statute unless it is general, and includes all the debtor's property. It must be such an assignment, as amounts to a total devestment of all his interest and estate. If it be a partial assignment only, it is wholly immaterial, how much or how little it includes; whether nine-tenths or ninety-nine hundredths; so always that the omission be not by fraud or mistake. Now, the answer of the defendant Munroe utterly denies, that in point of fact the assignment did include all the debtor's property, or was intended to include all. The assignment does not, in form, purport to convey all; but only specific and enumerated portions of property. The whole evidence, including that of Langton himself (who is a witness for the government), admits, that a small portion was not included. The amount is not great, being about $1000, and constituting not more than one twentieth of the debtor's property. The omission of this property is proved by all the testimony to have been by design, and not by accident. It was reserved to pay particular creditors, and not fraudulently to evade the statute. How, then, can the court give effect to this as a general assignment, when it conveyed a part only of the debtor's property? When the reservation was in good faith, and not by mistake?

In the next place, as to the asserted mistake in the draft of the assignment. The language of the instrument is perfectly unequivocal. In terms, it gives priority of payment to custom-house bonds, on which Munroe is surety, estimating them at $8,400. It is true, that the bonds on which Munroe is surety, fall short of that amount; and the bill avers, that all the bonds owing Langton, fall short of it. The sum, therefore, was adopted as a conjectural amount, and no light arises from that circumstance. The answer of Munroe explicitly denies, that any other bonds than those, on which he was a surety, were intended by the clause, the principal object of the instrument being to give him a universal priority or preference in payment of his debts and liabilities. How is this answer met? By general testimony from one witness, that he understood all bonds were to be included; and by the testimony of Langton, to the same effect. But Langton, if a competent witness, is not now without some bias; for it is now manifestly his interest to escape from being arrested in execution upon the outstanding judgments of the United States; and if taken in execution, he cannot be released except by some act of the government, or its authorized officers. In cases of asserted mistake in written instruments, it is not denied, that a court of equity has authority to reform the instrument. But such a court is very slow in exerting such an authority; and it requires the strongest and clearest evidence to establish the mistake. It is not sufficient, that there may be some reason to presume a mistake. The evidence must be clear, unequivocal and decisive; not evidence which hangs equal, or nearly in equilibrio. Now, in the present case, the scrivener who drew the instrument, has not been examined; and if examined, he could have stated his instructions. And if the draft conformed to the actual instructions given by both parties, and especially by the debtor, any antecedent loose conversations would not be entitled to much weight. They would be deemed merged in the more deliberate results of the written instrument. Besides, here the question is not merely a question of the correction of a mistake between the original parties. Munroe's assignees and creditors are essentially interested. They may have released their debts upon the faith of the validity of the assignment of Langton, in the original shape. Unless they had some notice of the mistake, it would be very difficult, even if they were parties before the court, to reform the assignment to their prejudice. As the case is presented before the court, my judgment is, that the bill ought to be dismissed. But there was reasonable cause for filing the bill, and I shall so certify. Decree accordingly.