# CHARLESTON.

GILBERT BROS. & CO. *v.* LAWRENCE BROS. *et al.*

Submitted June 16, 1904.   Decided November 22, 1904.

1. CESTUIS QUE TRUST—*Purchaser.*
    Trustees and *cestuis que trust* are in this State always treated as purchasers for value. (p. 290).

2. INNOCENT PURCHASER—*Trustee—Fraud.*
    A pre-existing debt is, of itself, a valuable consideration for a deed of trust, executed for its security, which deed, if it be duly recorded, and was not executed with a fraudulent intent, known to the trustee, or to the beneficiaries therein, will be valid against all prior secret liens and equities. and all subsequent alienations of, and incumbrances on, the trust property. (p. 290).

3. RESULTING TRUST—*Evidence.*
    To establish a resulting trust in land by parol, the evidence must be full, clear and satisfactory. (p. 292).

4. LIEN—*Suit—Notice.*
    C. obtained a judgment against L. and others which became a lien on several separate tracts of land owned by L. A creditor's suit was brought against L. and others, to enforce their liens against some of said tracts of land. There was a reference; and the notice to lien holders was published and posted.

The lands proceeded against were sold and the proceeds of the sale distributed among the several lien holders who appeared and proved their liens. C. did not present or prove his lien in that suit. He received no part of the proceeds of the sale made therein. Another creditor's suit was brought against L. and others in which the other lands, not proceeded against in the first suit, were sold. *Held,* That the failure of C. to prove his lien in the first suit, does not bar him from proving, and having it allowed, in its proper order in the second suit. (p. 293).

Appeal from Circuit Court, Randolph County.

Bill by Gilbert Bros. & Co., against Lawrence Bros. and others. Decree for plaintiff and Daniel Cooper, Sr., and others, appeal.

*Reversed.*

TALBOT & HOOVER and STRADER & STRADER, for appellants.

W. B. MAXWELL, A. JAY VALENTINE, HARDING & HARDING, JONES & HEINER, and CUNNINGHAM & STALLINGS, for appellees.

MILLER, JUDGE:

J. N. B. Crim, on the 22d day of May, 1890, recovered a judgment against G. W. Gall, Jr., Shelton L. Reger, S. L. Lambert, J. H. Lambert, H. C. Lambert and N. Pennington, for the sum of $576.29, with interest thereon from its date, and $17.50, the costs thereof. Crim caused an abstract of this judgment to be duly docketed in the judgment docket in the office of the clerk of the county court of Pendleton county on the 25th day of January, 1891, in the names of all of said parties thereto, both plaintiff and defendants. On the 19th day of October, 1892, Homan S. Nelson and wife, by their deed of that date, conveyed to said J. H. Lambert, a tract of land containing two hundred and sixty-two acres, situate in the county of Pendleton, which deed was duly recorded in that county on the 14th day of November, 1893.

By deed, bearing date on the 9th day of April, 1895, duly recorded in said county, on the 25th day of May, 1895, J. H. Lambert and his wife, conveyed this tract of land to R. B. Lawrence, G. W. Lawrence and W. C. Lawrence jointly for the consideration of $6,000.00 cash, the payment of which is ac-

knowledged in the deed. The last named grantees by their deed, dated May 4, 1895, duly recorded in the county last. aforesaid, on the 14th day of November, 1895, conveyed said land to Daniel Cooper, Sr., in trust, to secure the payment of the joint promissory note of R. B. Lawrence, G. W. Lawrence and W. C. Lawrence, for $1,045.88, bearing even date with the trust deed, and payable to Daniel Cooper, Jr., one day after its date. By their second deed of trust, bearing date on the 9th day of May, 1895, duly recorded in Pendleton county, on the 31st day of May, 1895, said R. B., G. W. and W. C. Lawrence conveyed this land to one Sol W. Phares, trustee, to· secure to R. M. Sutton Co. the payment of $664.00, in monthly installments.

On the 23rd day of August, 1895, Gilbert Bros. & Co., ap-- pellees, commenced their suit in chancery in the circuit court of Randolph county, and, at the September rules thereafter, filed their creditor's bill against R. B. Lawrence, G. W. Law-rence and W. C. Lawrence, partners trading as Lawrence Bros., and also against certain other persons and firms, as judgment creditors of Lawrence Bros. At August rules, 1903, the plain-- tiffs filed in the cause an amended bill, making parties defend-ant·thereto, certain other judgment creditors of Lawrence Bros,. and, in addition to the lands specifically mentioned in the orig-inal bill, alleged the ownership of the two hundred and sixty- two acres in fee in Lawrence Bros.

By their deed, bearing date on the 24th day of October, 1896, R. B. Lawrence, G. W. Lawrence and W. C. Lawrence, with their wives, in consideration of one dollar, conveyed the two hundred and sixty-two acres of land to one Bessie L. Teter, nee Bessie L. Phares, who was the ward of W. C. Lawrence, which deed was also placed on the record.

It also appears from the record that the Kenneweg Company,. a corporation, had also instituted a chancery suit, and filed a creditor's bill against Lawrence Bros. and others, in the circuit court of Pendleton county, which suit was removed to, and, on the 15th day of May, 1897, docketed in the circuit court of Randolph county, wherein it was ordered to be joined, pro-ceeded in and heard with the cause of Gilbert Bros. About this· time, Bessie L. Teter, nee Phares, by H. C. Teter, her husband and next friend, filed her petition in these suits, wherein she, among other things, alleges that by the last will and testament

of her mother, she was entitled to the sum of $1,800.00; that said W. C. Lawrence was duly appointed, qualified and acted as her guardian; that as such guardian he received $1,800.00 of her money and estate; that he did not loan out said money, taking bond with good security as he should have done, but used it in his business; and that said money was used by him to pay for said two hundred and sixty-two acres of land, conveyed to himself, R. B. Lawrence and G. W. Lawrence as aforesaid, and afterwards by them conveyed to her as hereinbefore stated; that the reason said land was conveyed to her by them was and is that her money was used to purchase it; and that said Lawrence desired to reimburse her. She further alleges that her guardian, W. C. Lawrence, had squandered her money; that her said guardian and R. B. Lawrence, his surety, are both insolvent; and that neither of them have any real estate except their interest in said tract of land. She also says that she is entitled to hold said real estate under said deed to her; that her title thereto is superior to any judgment obtained against W. C. Lawrence, and docketed after her said deed was placed on record; and that, if said real estate is sold, and any money be left after payment of judgments obtained and docketed against her guardian before said deed was recorded, she is entitled to such money.

Petitioner was made a defendant to said causes at the October rules, 1898. She then filed an amended and supplemented petition in which she says that W. C. Lawrence, shortly after his qualification as her guardian, received in his capacity as such, a large sum of her money, derived from her mother's estate, towit: the sum of $1,800.00; that instead of placing said sum of money at legal interest and securing the same, for the benefit of petitioner, her said guardian invested the whole thereof for her, in certain real estate, lying in Pendleton county, which the said R. B. Lawrence, G. W. Lawrence and W. C. Lawrence purchased from J. H. Lambert and had the same conveyed to them by deed, bearing date on the 9th day of April, 1895; that, while the said sum of $1,800.00 was actually the money of petitioner at the time of the purchase of the land, and was then and there invested in said real estate for her by her guardian, yet by some omission of duty on his part, he failed to have her name inserted in the deed therefor as one of the

grantees therein; and that, to repair the unintentional wrong done her as aforesaid, her said guardian procured the deed of October 24, 1896, to be executed to her as aforesaid for the whole of said land in fee simple, the actual and only consideration therefor being said sum of $1,800.00, and its accrued interest, which her guardian, W. C. Lawrence, had used in the purchase thereof. Various orders and decrees were made in said causes. Nine several reports of commissioners were made and filed therein at different times. Sales were made of the land described in the papers and proceedings of the causes aforesaid. By consent of all the parties in interest, sale of the two hundred and sixty-two acre tract was made on the 30th day of June, 1899. The land brought the sum of $4,920.00, and the sale thereof was confirmed by the court on the 5th day of July, 1899, but the decree of confirmation directs the special commissioner who made the sale to retain in his hands to abide the future order of the court, in relation thereto, the net proceeds of sale, after paying costs and expenses thereof. Some time in 1902, Bessie L. Teter died intestate, and H. C. Teter qualified as her administrator. The suits were then revived in his name, as such administrator.

On the 12th day of October, 1903, Commissioner Baker, to whom the causes had been referred, filed his report therein, from which the following excerpts are taken:

"As to the liens existing and unpaid against the funds arising from the sale of the two hundred and sixty-two acres of land, your Commissioner has ascertained and reports as follows:

"First in order of priority as a lien thereon is due to Nelson Brothers, the vendors lien which is prior to the other debts, the amount of which was $745.33 as of May 5, 1903, when A. M. Cunningham, Special Commissioner, paid the same to himself as attorney for said Nelson Brothers.

"Next in order your Commissioner reports that he finds in respect to the rights of Bessie Teter, deceased, and her personal representative, in respect to the two hundred and sixty-two acres of land in Pendleton county conveyed on the 9th day of April, 1895, by James H. Lambert and wife to Robert B. Lawrence, George W. Lawrence and William Clarke Lawrence, that in the purchase thereof William Clarke Lawrence who was the

.guardian of Bessie Teter, his infant ward, invested in the said land the sum of $1,800.00 then in his hands of the separate and ·distinct funds belonging to Bessie L. Teter, which she derived under the will of her mother the late Martha S. Phares, said ·will bearing date on the 2nd day of February, 1899, which is .established before me by the said will and the depositions of W. Clarke Lawrence, H. C. Teter, Bessie L. Teter and others filed on the 23rd day of January, 1899, in this cause. I fur- .ther find that to the extent of said investment of the funds of Bessie L. Teter in said farm in the name of her guardian, a resulting trust exists in her favor, and that she is entitled .to have the amount thereof decreed to her without abatement for any credits on account of her guardian, or for any of the .costs incurred by any of the parties to this procedure; and I further find that her interest in this land is not abated or re- duced by any of the liens suffered by the said Lawrences or .required by any of the other creditors, which are sought to be .charged thereon. And I find that the amount due to the ad- ministrator of said Bessie L. Teter out of the proceeds of said fund standing to the credit of this cause and treated as land, .amounts to $2,718.00, including the interest to October 10, 1903, and that she ought to be allowed her costs incurred in the cause, which I also find to be $3.05, being the costs of her petition and her depositions and her exhibits filed before me,

\* \* \* · \*

"Third in order of priority as a lien thereon there
   is due to R. M. Sutton & Company the amount of
   their deed of trust debt for the sum of........$ 664.00
Interest on same to October 10, 1903.............. 287.40

   Total due October 10, 1903.......:...............$ 951.40

"Next in order of priority as a lien thereon there is
   due to Daniel Cooper, Sr., his deed of trust debt
   for the sum of ...............................$1,045.85
Interest to October 10, 1903....................... 457.06

   Total due October 10, 1903.....................$1,502.91

\* \* \* \* \* \* \*

"As to the third requirement under said decree hereinbefore ·spoken of, your Commissioner reports that the Lawrence Broth- ers purchased jointly said two hundred and sixty-two acres of land, at the price of $6,000.00, W. Clarke Lawrence purchasing with his two brothers, as guardian of Bessie L. Teter, and in-

vested therein $1,800.00 of her separate funds which she derived under the will of her mother hereinbefore mentioned, as shown by the depositions of W. Clarke Lawrence, H. C. Teter, Bessie L. Teter and James H. Lambert. * * * * * *

"As to the seventh requirement under said decree, your Commissioner reports that he finds that there arose out of said sale of said land purchased with the funds or estate of Bessie L. Teter $1,800.00 with interest thereon from April 9, 1895, to October 19, 1903, making a total of $2,718.00.

"As to the judgment set out in the petition of J. N. B. Crim filed in this cause, your Commissioner does not report said judgment for the following reasons: (1) Because he finds that in the chancery suit pending in Pendleton County of Geo. W. Adamson against James H. Lambert and others, there was an order of reference to a Commissioner and a notice to lien holders published and posted by said Commissioner, in which the defendant Crim failed to prove his said judgment—and in the said suit James H. Lambert and wife, by deed dated on the 1st day of November, 1898, a copy of which is appended to the amended answer of Robert B. Lawrence and others filed herein, conveyed to Benjamin H. Hiner several tracts of land containing one hundred and forty-eight acres—for the price of $1,-400.00 out of which the said Hiner agreed to pay the liens reported and found in the said chancery cause to exist thereon, in which county the judgment of said Crim was then docketed. Your Commissioner therefore reports that under sec. 7 of chap. 139 of the Code he is barred of his rights to prove the said debt herein. (2) Because I find the said Crim's judgment was docketed in Tucker County on the 26th day of July, 1890, and that at that time H. Clay Lambert, one of said judgment debtors, owned a farm composed of four tracts containing two hundred and forty acres on Sapling Ridge, which by memorandum in writing dated June 5, 1899, and made a part of the deed filed before me, directed W. B. Maxwell and A. Jay Valentine, Special Commissioners, to convey to J. S. Teter said land, which was done by deed dated on the 4th day of December, 1899, a copy of which is made a part of this report of the said memorandum thereto attached. Further the said H. C. Lambert was also the owner of a lot in the town of Davis, which

he conveyed on the 23rd day of October, 1900, to R. D. Roberts in consideration of $250.00.

"Considering the facts hereinbefore set out relative to said Crim judgment your Commissioner refuses to report said judgment as a lien upon the two hundred and sixty-two acres of land conveyed by James H. Lambert, and for these reasons in addition to the fact that said judgment against Gall, Reger and others, when docketed in Randolph county, was not docketel as to James H. Lambert, his name being omitted therefrom."

This report was excepted to by Crim, and the other creditors, as will hereinafter appear.

On the 21st day of October, 1903, said causes came on to be finally heard together, and upon the papers and proceedings therein, including the settlement of the accounts of W. C. Lawrence, as guardian of Bessie L. Teter; the report of Commissioner Baker, with exceptions thereto by Crim, Daniel Cooper, Sr., and other creditors of Lawrence Bros.; whereupon the court overruled all of said exceptions, save exception No. 1, endorsed by Crim, which is hereinafter referred to, and confirmed the report; and then proceeding to adjudicate and fix the rights of the parties with respect to the sum of $4,005.89 standing to the credit of these causes, the court adjudged, ordered and decreed that there should be paid therefrom to Henry C. Teter, administrator of Bessie L. Teter, the aggregate sum of $2,-718.00, with interest thereon from October 10, 1903. It was further adjudged, ordered and decreed that William Clarke Lawrence, guardian for his infant ward Bessie L. Teter, having on the 9th day of December, 1895, invested in the said land $1,800.00 of the separate estate of the said infant ward, derived by her under the will of her deceased mother, held the said land to the extent of the said investment in trust for the said Bessie L. Teter, and that none of the creditors of Lawrence Brothers had any right to charge or diminish the said funds, or the proceeds thereof, with any of their debts against the said firm or any member thereof, and that in lieu of the said land, which by consent decree heretofore entered, was converted into money, the administrator of said infant is therefore entitled to have and receive the said sum of $2,718.00 with interest thereon from the 10th day of October, 1903, and the costs of her said petition herein, including a docket fee, and her costs incurred before the Commissioner, to the extent of $3.95. It

is therefore further adjudged, ordered and decreed that the West Virginia Trust Company, general receiver of this court, do pay to H. Clay Teter, administrator as aforesaid, the said sum of $2,718.00 with interest from October 10, 1903, as aforesaid, and the said costs. It is further adjudged, ordered and decreed, that the rights of other creditors in respect to the residue of the said funds, and their priorities thereon are as follows: Next in priority and next entitled to be paid is the trust lien in favor of R. M. Sutton & Company, aggregating on the 10th of October, 1903, $951.40: Next in order of priority is the lien thereon of Daniel Cooper, Sr., for his trust debt aggregating $1,502.91: * * * * But the Exception First, endorsed by defendant Crim, because of the failure of Commissioner Baker to report his judgment for $576.92 with interest thereon from May 24th, 1890, is sustained. And no decree is made therefor allowing defendant Crim to participate for payment thereof, out of the proceeds of the lands of Lawrence Brothers for the reason that it appears to the court from the record of this cause, that all of said real estate was sold under a consent decree herein, and realized a sum insufficient to pay the prior liens fixed thereon."

From this decree, Crim and Daniel Cooper, Sr., obtained an appeal; and have assigned various grounds of error, not necessary to be here specifically set out.

It is contended on behalf of the deed of trust creditors of Lawrence Bros. that they are purchasers of the said two hundred and sixty-two acre tract of land for value, and without notice of the alleged resulting trust thereon in favor of Bessie L. Teter; and also for all of the creditors, that said alleged resulting trust has not been established. Crim insists that his judgment against J. H. Lambert and others was and is a valid and subsisting lien on the said two hundred and sixty-two acres, subject only to the vendor's lien thereon in favor of Nelson, the grantor of Lambert; and that it is also a lien on said funds in the same order and priority. The questions relating to the rights of the deed of trust creditors to the aforesaid funds will be first considered and determined.

It is not claimed that the trustees or *cestuis que trust,* in the deeds of trust, or either of them, had notice or knowledge of the alleged demand of Bessie L. Teter, at the time of the execu-

tion, or delivery of the trust deeds. Trustees and trust credit-
ors in deeds of trust, are treated in this state as purchasers for
value. *Fidelity Co.* v. *Railroad Co.,* 32 W. Va. 244, 259; *Dun-
can* v. *Custard,* 24 W. Va. 730; *Wickham* v. *Martin,* 13 Grat.
427; *Douglass M'dse. Co.* v. *Laird,* 37 W. Va. 687; *McClaskey*
v. *O'Brien,* 16 W. Va. 794; *W. M. M. Co.* v. *Peytona C. C. Co.,*
8 W. Va. 409; *Evans* v. *Greenhow,* 15 Grat. 157. In the last
mentioned case, the court says: "A pre-existing debt is, of it-
self, a valuable consideration for a deed of trust executed for
its security; which deed, if it be duly recorded, and was not
executed with a fraudulent intent, known to the trustee or the
beneficiaries therein, will be valid against all *prior secret liens
and equities,* and all subsequent alienations and incumbrances.
* * * * I think it has been the constant course of the courts
of this State to regard the creditors in a deed of trust, made
by their debtor, *bona fide* for their indemnity, in the light of
purchasers for value." In *Wilcox* v. *Calloway,* 1 Wash. (Va.)
42, the court says: "A purchaser of the legal title is not to be
affected by any latent equity, whether founded on trust, fraud
or otherwise, of which he has no actual notice, or which does
not appear in some deed necessary in the deduction of the ti-
tle, so as to amount to constructive notice." *Idem.* 212. In
*Marshall's Exr.* v. *Hall,* 42 W. Va. 644, the Court says: "When-
ever a trust fund has been converted into another species of
property, if its identity can be traced, it will be held, in the
new form, liable to the rights of the *cestui que trust.* So long
as it can be identified either as the original property of the
*cestui que trust,* or as the product of it, equity will follow it;
and the right of reclamation attaches to it until detached by
the superior equity of a *bona fide* purchaser for valuable con-
sideration without notice." I Perry on Trusts, § 218, *et seq.*
Further citation of authorities is not necessary. It is plain
that, if Bessie L. Teter, had any money invested in the two
hundred and sixty-two acres of land by her guardian, her claim
cannot prevail against the said trust deeds, and the debts of
Lawrence Bros. mentioned therein, and secured thereby. To
establish her alleged claim against the two hundred and sixty-
two acres of land, Bessie L. Teter, proved by W. C. Lawrence,
her guardian, that he qualified as such in 1893; that he received
as such guardian about $1,813.00 of the money belonging to his

ward, $1,013.00 thereof in March, 1893, and the residue in November, 1894; that he paid $1,800.00 of said money on the purchase of said two hundred and sixty-two acres of land; that before the said purchase he had put the money into cattle and sheep and paid the money arising from the sales thereof into the land; that he paid the money for Bessie L. Teter, nee Phares. Lawrence further testifies that he put the money into cattle and sheep some time after he got it; that he could not tell exactly from whom he bought all of the stock; that he put all of the money used by him into stock; that he generally kept the stock from one to two years after its purchase; that a part of the guardianship money was handled by his brother; that he handled about $1,200.00, and his brother, R. B. Lawrence, the balance of it; that his brother also put the money which he handled into stock; that the first purchase of stock was about $400.00 in value, and was made by him in 1893; that the next purchase, about $800.00 in value, was made in 1894; that this stock was bought with his ward's money; that, at the time of the purchase of the Lambert two hundred and sixty-two acres of land, he had on hand stock so purchased, of about the value above given; that he paid out the $1,800.00 of his ward's money by taking up the paper and notes of J. H. Lambert, and that he and his brother, R. B. Lawrence, took up this paper. J. H. Lambert, grantor of the land to Lawrence Bros. testifies that, as part of the $6,000.00 consideration for the land he bought of Lawrence Bros. their store at Herman for $3,300.00; another house and lot at $1,200.00; and, that for the balance, they paid him money, and assumed and paid debts for him, one of which debts was $1,400.00. The settlement of said W. C. Lawrence, as guardian for Bessie L. Teter, voluntarily made by him before the commissioner of accounts for Pendleton county, hereinbefore mentioned, is for the years 1893, 1894, 1895, 1896, 1897 and 1898. It charges the guardian with $1,013.00 of money belonging to his ward for 1894; $1,709.96 for 1895; $1,862.87 for 1896; $1,804.56 for 1897; and $1,855.42 for 1898. For all of said years, it gives credit to the guardian for taxes paid by him on said money and for other items expended by him for his ward. In addition to this evidence, W. C. Lawrence joined in both of said deeds of trust, and was and is a joint maker of the note executed to Daniel Cooper, Sr., as aforesaid, after he had taken the title to the land

to himself and brothers, thus allowing innocent purchasers for a valuable consideration without notice of the said claim of his ward to become interested in the land. He says in his evidence: "I meant to purchase the land for her. When I purchased this land, I didn't know there was anything to amount to anything against me." Bessie L. Teter was a witness on behalf of herself. She says nothing as to the purchase of the land for her by her guardian. Asked what money she had received from her mother, and who has had it since, she answered: "Something over $1,800.00, and W. C. Lawrence has had the money ever since."

The facts in all cases in which resulting trusts are sought to be established must be proved with great clearness and certainty. 1 Perry on Trusts, § 137. *Bright* v. *Knight,* 35 W. Va. 40, holds that such proof must be full, clear and satisfactory. *Troll* v. *Carter,* 15 W. Va. 567; *Smith* v. *Turley,* 32 *Id.* 14; 6 Hurst's-Dig. 742. The trust must arise at the *time* the title is taken. No subsequent oral agreement or payment will create it. *Smith* v. *Turley, supra.* In *Myers* v. *Myers,* 47 W. Va. 487, it is held that, to create a resulting trust in favor of a ward in a tract of land purchased by his guardian, the trust funds must either have been paid at the time of, or entered into the consideration for, the contract of purchase, though afterwards paid. 27 Am.. & Eng. Enc. Law, 250, *et seq.* The proof in this case does not establish a single necessary element of the alleged resulting trust in favor of Bessie L. Teter.

It is insisted that no error was committed in barring Crim from participation in the proceeds of the sale of said two-hundred and sixty-two acres of land. His judgment is properly proved. There is no evidence that it has ever been paid or released. It was a lien on all of the lands of, or to which J. H. Lambert was possessed, or entitled at, or after the date thereof. Code, chapter 139, section 5. The judgment was a lien on said two hundred and sixty-two acres at the time of the alienation thereof by Lambert to Lawrence Bros. Before and at the date of said conveyance, the judgment was docketed in Pendleton county. Crim's lien was prior to all other judgment liens on the land. Lawrence Bros. took the land with legal notice of, and subject to, this lien. *Idem.* sec. 6. Crim could have enforced his lien in a suit in equity against this, or any other

land upon which his judgment was a lien. *Idem* sec. 7. In the said cause of *Adamson* v. *Lambert et al.,* Crim was not made a formal party. The two hundred and sixty-two acres was not proceeded against or involved therein. No liens thereon were ascertained or reported in that cause. Crim had the right under the statute cited to enforce his judgment lien against the lands described in that suit, or against the two hundred and sixty-two acres in the suit against Lawrence Bros. We are therefore unable to see how his lien could be discharged in the last named suit by his failure to present and prove his judgment in the first mentioned cause. We are of opinion that he did not by his omission to prove his judgment in the first mentioned suit, lose the benefit of his lien on said two hundred and sixty-two acres of land, or upon the proceeds of the sale thereof in the last mentioned cause; but that he is entitled to have the same reported and allowed therein in its proper order and priority.

For the reasons stated, we are also of opinion that there is error in the decree complained of. The same must therefore be reversed and annulled; the exceptions to Commissioner Baker's report sustained; and the cause remanded to the circuit court for further proceedings to be had therein, according to the views herein expressed, and further according to the rules and principles governing courts of equity.

*Reversed.*