### HOPE v. BOURLAND.

No. 813, ·Ind. T.    Opinion Filed September 9, 1908.

(98 Pac. 580.)

1.    APPEAL AND ERROR—Review—Questions of Fact—Findings by Special Master—Conclusiveness.   Where, in a suit to reform a deed, a consent order was entered, appointing a special master "to hear the evidence and decide all the issues between the parties, and make his report to the court, stating his findings, both of fact and law," such finding of facts should be given the same conclusiveness as the verdict of a jury or the finding of facts by the court sitting as a jury, and will not be disturbed when reasonably supported by the evidence.

2.    REFORMATION OF INSTRUMENTS—Grounds—Mistake—Lack of Mutuality.· Where, in a suit to reform a deed on the ground that the description erroneously included certain land intended to be reserved, where the findings of facts show that no fraud existed; that the grantee had contracted for, and intended to buy, the land included within the boundaries described in the deed, without reservation; that it was not clear that the grantor intended to make such reservation at the time of the execution and delivery of the deed, but that it was her intention "to convey, and the intention of the grantee in said deed to receive

and pay for, all the lands described in said deed"—the mistake, if any, was not mutual and the decree of the trial court reforming such deed was erroneous.

(Syllabus by the Court.)

*Error from the United States Court for the Southern District of the Indian Territory, at Ada; Joseph T. Dickerson, Judge.*

Action by Tom Hope against Frances Bourland. Judgment for defendant, and plaintiff brought error to the United States Court of Appeals in the Indian Territory, whence the cause was transferred to the Supreme Court of the state of Oklahoma. Reversed and remanded, with instructions.

On April 24, 1905, Tom Hope, plaintiff in error, plaintiff below, filed his complaint in equity against Frances Bourland, defendant in error, defendant below, in the United States Court for the Indian Territory, Southern District, at Ada, and secured an order enjoining · her and others from removing a certain barn from certain lands described in the complaint. On October 13, 1905, he filed an amended complaint, alleging, in substance, that the defendant, Frances Bourland, had conveyed to him, by authority of the Secretary of the Interior, under an act of Congress, March 3, 1903, the 134.89 acres of land set forth in the original complaint; that there was no reservation in said deed, except for the right of way and station grounds of the Texas & New Orleans Railway Company, on which said land the barn mentioned in the original complaint was situated; that the defendant unlawfully claimed and occupied a part of the land so conveyed by her, consisting of three acres (describing it), and claimed title thereto; that defendants had removed said barn from said tract of three acres, the property of plaintiff, and were about to remove same upon other lands, of which the defendant was the owner; that by reason of the unlawful acts of defendant, plaintiff had been damaged in the sum of $400, and prayed for the possession of said three acres of land, and for said damages and for a perpetual injunction.

To this defendant filed demurrer and answer, and by way of cross-complaint defendant in error, Frances Bourland, alleged that she is a member of the Chickasaw tribe of Indians, and that the land described in the complaint is a portion of her allotment as a member of said tribe. She admits the execution of the deed mentioned in the complaint, but avers that it was executed in carrying into effect the terms of a written agreement made by her with plaintiff, Tom Hope, and his then associates, W. L. Byrd and Otis B. Weaver; that in said written agreement she undertook to convey to the plaintiff and his associates a portion of her allotment conveyed by said deed, save and except a three-acre tract of land, upon which was situated her dwelling house and other improvements; that if said three-acre tract was described in said deed, it was so included by mistake or fraud of the plaintiff in representing to her, at the time of its execution, that the same was in accordance with said agreement; that she has been in possession of said three acres, holding and claiming the same for the past 20 years, and adversely to plaintiff since the execution of said deed; that the order of injunction was unlawfully issued, by reason of which she has suffered damage in the sum of $1,000 and exemplary damages in the sum of $5,000 and prayed for a reformation or cancellation of said deed to the end that whatever title to said three acres was thereby vested in plaintiff be reinvested in her, and that the order of injunction be dissolved. Frank Jones, John W. Beard, E. W. Hardin, Otis B. Weaver, W. A. Alexander, and T. J. Chambless are made parties and adopt the pleadings of the plaintiff.

After issue joined a consent order was entered, appointing W. R. Blakemore as special master to hear the evidence and decide on the issues between the parties and make his report to the court, stating his findings, both of fact and of law, which he did on March 17, 1906, in effect, finding the issues in favor of plaintiff.

On June 22, 1906, the cause coming on to be heard, the court set aside the report of the master, dissolved the injunction, gave

judgment against plaintiff and his sureties on the injunction bond for $200 damages, taxed him with the costs, and ordered a réformation of the deed, from all of which plaintiff took a writ of error to the United States Court of Appeals in the Indian Territory, and the same is now before us for review as successor of that court.

*Clinton A. Galbraith, Tom D. McKeown, Henry M. Furman,* and *A. M. Croxton,* for plaintiff in error.
*Duke Stone,* for defendant in error.

Turner, J. (after stating the facts as above.) The question for us to determine is whether or not the court erred in setting aside the report of the special master, and in rendering judgment in accordance with the prayer of the cross-complaint. This report was more than advisory to the court. It will be observed that the special master by consent was directed "to hear the evidence and decide on the issues between the parties and make his report to the court, stating his finding, both of fact and of law." Such a reference gives to the finding of fact in this case the same conclusiveness as the verdict of a jury, or the finding of fact by the court sitting as a jury. *Greenhaw et al. v. Combs,* 74 Ark. 336, 85 S. W. 768.

This reference is almost identical with that in the case of *Kimberly v. Arms,* 129 U. S. 512, 9 Sup. Ct. 355, 32 L. Ed. 764, where the court said:

"By the consent in the case at bar it was intended that the master should exercise power beyond that of a reporter of the testimony. If there had been such a limitation of his authority, there would have been no purpose in adding to his power 'to hear the evidence,' the power to 'decide all the issues between the parties and make his report to the court, separately stating his findings of law and of fact' together with the evidence. * * * We are therefore constrained to hold that the learned court below failed to give to the findings of the master the weight to which they were entitled, and that they should have been treated as so far correct and binding as not to be disturbed, unless clearly in

conflict with the weight of the evidence upon which they were made."

In *Davis v. Schwartz,* 155 U. S. 631, 15 Sup. Ct. 237, 39 L. Ed. 289, the court, in speaking of a report under a similar reference, said: " * * * But so far as it depends upon conflicting testimony, or upon the credibility of witnesses, or so far as there is any testimony consistent with the finding, it must be treated as unassailable"—citing authority.

The Supreme Court of Arkansas, under whose chancery practice this case was tried, it having originated and been tried in the Indian Territory prior to the adoption of the Constitution, in speaking of the weight and effect to be given to the report of a special master under a consent reference, as in this case, in *Greenhaw v. Combs,* 74 Ark. 336, 85 S. W. 769, after adopting the rule as laid down by the Supreme Court in the preceding case, said: "Where there is any testimony legally sufficient to support such findings, they will not be set aside." The United States Court of Appeals for the Indian Territory laid down the rule in *Rainwater, Bradford Hat Co. et al. v. McBride et al.,* 3 Ind. T. 621, 64 S. W. 556, in the syllabus to that case, in effect, that such a master's report is to be regarded on appeal as the finding of a properly instructed jury.

Guided by these principles, we find, after a careful examination of the testimony, there was practically no conflict therein, and that the findings of fact by the referee are amply supported by the evidence. It then remains for us to determine whether the judgment of the lower court was proper upon those findings.

The findings disclose, in short, that on August 14, 1903, defendant, Frances Bourland, entered into a written contract with plaintiff and his associates, agreeing that for $4,250 she would, at such time as the approval of the Secretary of the Interior could be procured, convey to plaintiff 150 acres of her own allotment, and 50 acres allotted to her minor son (describing both tracts), except that out of the land allotted to her there was to be reserved to her, without reduction of the purchase price, 3

acres to be selected by her, upon which was situated her dwelling house and other improvements. In the meantime, and before the approval of the Secretary of the Interior was invoked, plaintiff and his associates laid off this land into lots and blocks, and platted the same, showing the 3 acres to be reserved to her, designated the same the "Bourland Reservation," and sold off the major portion of the lots. Doubt having arisen in the minds of these parties as to their ability to secure approval of the Secretary of the Interior for her to alienate the 50 acres belonging to her minor son, a second contract in writing was made, and entered into between the parties on the 17th day of September, 1904, more than a year after the first agreement. The second agreement, in substance, provided that she would make application to the Secretary of the Interior to alienate her said lands and use her best efforts to procure his approval to sell the land of her minor son, but that, in the event said effort was unsuccessful, then Hope and his associates agreed to pay her, as soon as she conveyed to them by warranty deed certain lands set forth in the contract, which was a portion of her allotment mentioned in the first agreement embracing the "Bourland Reservation," the sum of $950, in addition to the sum of $3,300, which she had theretofore agreed to accept from them for the same land. No reservation or exception of any kind was made in this last agreement, and so far as the testimony discloses, nothing was said about her three-acre tract upon which she resided at the time of making the second agreement, and upon which she continued to reside until a short time before the commencement of this suit. About a month after making this second agreement the Secretary of the Interior granted her the required permission to alienate the land described in the second agreement belonging to her for said town-site purposes, but provided in his order that the same should not be sold for a sum less than $50 per acre. In application for this permission, she described the land exactly as set forth in this second contract, and shortly after receiving it went to Muskogee, where the deed sought to be reformed was prepared for her sig-

nature. It was read to her in the office of the attorney who pre-
pared it, and read and examined by her codefendant, Little, who
was then her agent, and whom she afterwards married. It was
taken to the office of the Commission to the Five Civilized Tribes,
where it was again read to her by the chairman of the com-
mission, who explained its contents to her, and then and there re-
ceived $6,744.50, the purchase price of the land, but in that deed
no reservation of the three-acre tract was made, and nothing said
about it.

Plaintiff intended that it should, and the deed did, contain a
description of all the land for which he had contracted in the sec-
ond agreement, and the report discloses that it "is not clear by
any means that it was the intention of the defendant, Mrs. Bour-
land, at the time of the execution of the deed, to have reserved to
her and excepted from said conveyance, the three-acre tract known
as the 'Bourland Reservation,' " but "* * * that it was her intention
to convey, and the intention of the grantees in said deed to receive
and pay for, all the lands described in said deed, and in the order
of the Secretary of the Interior authorizing her to alienate the
same." The report states that "no misrepresentations were made
at the time of the execution of the deed in question to induce her
to sign it, and if there was a mistake made in the drafting of
the instrument, it was a unilateral mistake, and not the result of
any fraud upon the part of the plaintiff." This is clearly not
a case wherein the facts found justify the court in ordering a
reformation of the deed. No fraud is found. No mutual mistake
existed under which the parties conveyed something not intended.
No mistake appears to have been made on the part of the plain-
tiff. He bought the land covered by the agreement, and it is
not clear that any was made on the part of Frances Bourland, in
that it does not clearly appear that she intended to have reserved
to her the three acres at the time she signed the deed. The re-
port says: "If there was a mistake made in the drafting of
the instrument, it was unilateral," etc. Relief cannot be granted
under the cross-complaint in such circumstances.

Conceding a unilateral mistake on the part of Frances Bourland, and that she did not intend to convey this land without a reservation of her three acres, which the finding of facts certainly does not show, there can be no rescissions of this deed, for the reason that plaintiffs cannot be placed in *statu quo*, they having, according to the finding of facts, already cut the property into lots and sold the major portion of it, and besides there is no offer in her cross-complaint to place them in *statu quo*. Neither is she entitled to a reformation of the deed. It is well settled that to warrant reformation, in the absence of fraud or imposition, there must be a mutual mistake—that is, a mistake shared by both parties—that to justify the reformation of a deed delivered, accepted, and acted upon, on the ground that it did not correctly express the agreement made by the parties, the proof must be clear and convincing; and, until a mistake has been established by such proof as leaves no rational doubt of the fact, no change will be made in the writing sought to be reformed. *Green v. Stone*, 54 N. J. Eq. 387, 34 Atl. 1099, 55 Am. St. Rep. 577.

Bishop on Contracts, §§ 707, 708, states the rule thus:

"The mistake must, in general, be mutual, and it must be clearly established by the proofs, which may be either oral or written. Indeed in no case will a court decree an alteration in the terms of a duly executed written contract, unless the proofs are full, clear, and decisive. Mere preponderance of evidence is not enough, and the mistake must appear beyond reasonable controversy."

See, also, *Royer Wheel Co. v. Miller*, 50 S. W. (Ky.) 62; *Mikiska et al. v. Mikiska et al.*, 90 Minn. 258, 95 N. W. 910; *Chapman v. Dunwell*, 115 Iowa, 533, 88 N. W. 1067.

In *Hearne v. Marine Insurance Company*, 20 Wall. 488, 22 L. Ed. 395, the Supreme Court of the United States, speaking through Mr. Justice Swayne, lays down the rule as follows:

"The reformation of written contracts for fraud or mistake is an ordinary head of equity jurisdiction. The rules which govern the exercise of this power are founded in good sense, and

are well settled. Where the agreement as reduced to writing omits or contains terms or stipulations contrary to the common intention of the parties, the instrument will be corrected so as to make it conform to their real intent. The parties will be placed as they would have stood, if the mistake had not occurred. Kerr on Fraud & Mistake, 419, 420. The party alleging the mistake must show exactly in what it consists, and the correction that should be made. The evidence must be such as to leave no reasonable doubt upon the mind of the court as to either of these points. *Beaumont v. Bramley,* 1 Turner & Russell, 41-50. *Marquis of Breadalbane v. Marquis of Chandos,* 2 Mylne & Craig, 711; *Fowler v. Fowler,* 4 De Gex & Jones, 255; *Sells v. Sells,* 1 Drewry & Smales, 42; *Loyd v. Cocker,* 19 Beavan, 144. The mistake must be mutual and common to both parties to the instrument. It must appear that both have done what neither intended. *Rooke v. Lord Kinsington,* 2 Kay & Johnson, 753; *Eaton v. Bennett,* 34 Beavan, 196. A mistake on one side may be a ground for rescinding, but not for reforming, a contract. *Mortimer v. Shortall,* 2 Drury & Warren, 372; *Sells v. Sells, supra.* Where the minds of the parties have not met, there is no contract, and hence none to be rectified"—citing authorities.

In *United States v. Monroe,* 5 Mason, 572, Fed. Cas. No. 15,835, Mr. Justice Story, speaking for the court, said:

"In cases of asserted mistake in written instruments it is not denied that a court of equity has authority to reform the instrument. But such a court is very slow in exerting such an authority, and it requires the strongest and clearest evidence to establish the mistake. It is not sufficient, that there may be some reason to presume a mistake. The evidence must be clear, unequivocal, and decisive."

As fraud has been eliminated from this case by the facts found, and from our mind after close scrutiny of the testimony, and as those findings present only a case of unilateral mistake, if any, we cannot see how it is possible to sustain the finding of the lower court. That court, in its opinion filed with this transcript, found that there was a mistake, that the minds of these parties had not met in a sale of this three acres, and for that

reason ordered the deed reformed so as to exclude the same there-from, and divested title thereto out of Tom Hope and his associates, parties and privies, and reinvested it in Frances Bourland. In this, we cannot concur; and, inasmuch as it does not clearly appear that a mistake of any kind was made, much less a mistake common to both parties, and that the deed as executed expressed the contract as understood by neither, we are of the opinion that the court erred in its action as stated, and in dissolving the injunction, and in awarding damages against plaintiff and his sureties on the injunction bond, and for that reason, the case should be reversed and remanded, with instructions to enter judgment in accordance with this opinion.

All the Justices concur.