HAYDEN *et al.* v. DANNENBERG *et al.*

No. 3099.   Opinion Filed September 1, 1914.

1. **TRUSTS—Constructive Trust—Beneficial Owner.** Where a party obtains the legal title to property, not only by fraud or by violation of confidence, or of fiduciary relations, but in any other unconscientious manner, so that he cannot equitably retain it against the rightful owner, equity carries out its theory of a double ownership, equitable and legal, by impressing a constructive trust upon the property in favor of the one who is in good conscience entitled to it, and who is considered in equity as the beneficial owner.

2. **SAME—Constructive Trust—Parol Evidence—Burden of Proof.** A constructive trust may be established by parol evidence, but the law for the safety of titles requires that the proof should be of the most satisfactory and trustworthy kind. The onus of establishing a constructive trust rests upon him who seeks its enforcement, and before a court of equity will be warranted in making a decree therefor, the evidence must be clear, unequivocal, and decisive.

(Syllabus by Sharp, C.)

*Error from District Court, Nowata County;*
*T. L. Brown, Judge.*

Action by N. B. Dannenberg and J. S. Hogue against John F. Hayden and B. F. Whitehill. Judgment for plaintiffs, and defendants bring error. Reversed and dismissed.

*W. A. Chase* and *W. A. Sipe,* for plaintiffs in error.

*W. H. Kornegay,* for defendants in error.

Opinion by SHARP, C. It is difficult to understand the nature of plaintiffs' cause of action from the language of the amended petition, the averments of which are vague, indefinite and uncertain. Both defendants' motion to strike and make more definite and certain, as well as demurrer to the petition, were by the court overruled, the latter, only, being assigned as error.

Briefly, the petition charges that the plaintiffs and defendant Hayden, in the year 1905, owned the right to an oil and gas lease on the allotment of Rebecca Condry (describing it), and

that they did not know whether there was evidence in writing of such ownership, though the defendant, Hayden, by agreement of the parties, had been intrusted with procuring such evidence; and that said plaintiffs and defendant, Hayden, were the owners, in addition, of an oil and gas lease upon 60 acres of land situated near the Condry allotment; that thereafter the said Hayden entered into a contract in writing with his codefendant, Whitehill, to operate *both leases* jointly, under which, according to plaintiffs' information and belief, defendant Whitehill was to furnish the necessary means to develop the oil and gas and to pay all royalties due the allottees, and as soon as the said Whitehill was reimbursed for his outlay, that said Hayden should have an undivided one-fourth interest in said leases and the profits to be derived therefrom, as well as in the machinery appurtenant thereto; that Hayden agreed with plaintiffs that the undivided one-fourth interest which he was to have in said leases was to belong equally to him and the said plaintiffs; that in consideration of plaintiffs' sharing in the undivided one-fourth interest received by Hayden from Whitehill, they consented to allow the latter to operate said leases; that they were informed the operating expenses of the properties would soon be met by the returns therefrom, and have asked the defendant, Hayden, to assign to them an undivided one-third interest in and to the one-fourth interest that he was to receive in the operation of said leases, which said defendant refused to do. The relief asked was that defendants be required to set out a copy of the contract made between them; that an accounting be had; that defendant, Hayden, be required to convey to plaintiffs the interest that each was entitled to in his contract with Whitehill; and that the court adjudicate and determine the respective rights of all parties in and to the leases, and for general relief. The court's decree does not include the 60 acres, on which plaintiffs and defendant, Hayden, had a lease, but is confined to 80 acres of the Condry allotment, and we shall therefore only consider the latter.

A trial being had before the court, both plaintiffs and defendants submitted findings of fact and conclusions of law. The first finding submitted by counsel for defendants was adopted by

the court, and by that it was determined that there was no writ-
ten agreement between Hayden, Dannenberg, and Hogue for the
former to secure for the latter two any interest in the lease made
by Rebecca Condry to Whitehill. All findings of fact, as well
as conclusions of law, submitted by counsel for plaintiffs, were
approved and adopted by the court. The findings of fact are as
follows:

"1. The plaintiffs and defendant Hayden, prior to the mak-
ing of the lease by Rebecca Condry to B. F. Whitehill owned an
oil and gas lease on the same land, viz: north half of southwest
quarter of section thirty-one, township twenty-seven, north, range
17, east; which was in the name of N. B. Dennenberg, one of
plaintiffs.

"2. By mutual agreement of the parties in interest this lease
was not sent in to the Department for approval and in lieu of
it, the lessor made a lease to B. F. Whitehill.

"3. The procuring cause of the making of the Whitehill
lease was the surrender of the Dannenberg lease and the ef-
forts of plaintiffs in getting the allottee to make the lease to
Whitehill.

"4. The consideration for the surrender of the Dannen-
berg lease was the agreement of the plaintiffs and defendant,
Hayden, to share equally the benefit to be derived from the con-
tract of defendant Whitehill to carry a one-fourth interest in
the lease made to Whitehill.

"5. That it was the understanding and agreement of plain-
tiffs and defendant, Hayden, that each of plaintiffs and defendant,
Hayden, should have a one-third interest in the one-fourth inter-
est carried by Whitehill.

"6. That defendant, Hayden, was by plaintiffs intrusted
with the carrying out of this joint arrangement, and, procuring
a contract with Whitehill to protect their respective interests,
and that the defendant, Hayden, made such contract in his own
name, and the contract introduced in evidence whereby the de-
fendant, Whitehill, obligates to carry a one-fourth interest for
John F. Hayden is the contract that was made by said Hayden
after procuring the consent of plaintiffs to surrender their in-
terest in the Dannenberg lease, and after plaintiffs procured the
execution of the Whitehill lease, and defendant, Hayden, used
the means and labor and efforts of plaintiffs in procuring the
Whitehill contract."

From the conclusions of law adopted by the court, it was determined that the plaintiffs, Dannenberg and Hogue, each had a one-third interest in the working contract between Hayden and Whitehill, and that they were entitled to an accounting from the defendants.

Numerous errors on the part of the trial court are charged, but one of which it is necessary to consider: Was there evidence sufficient to support either the court's findings of fact in favor of the plaintiffs, or the decree? Aided by the testimony, the findings, and the position of counsel for defendants in error in this court, we may infer that the theory upon which plaintiffs proceeded was that, for the purpose of working out right and justice, as claimed by them, a constructive trust should be declared and enforced by the court. Warranting this view is an excerpt from the brief of defendants in error, as follows:

"It was not a contract for the sale of land, tenements and hereditaments, or an interest in or concerning them, neither was it a contract to charge any person upon a lease of land, tenements or hereditaments—it was rather a trust created by operation of law, and arising from the confidential relations of the parties, and a failure to carry out the confidence reposed."

Treating the suit as one to declare a trust and determine the respective equities of the parties, as obviously the trial court did, it is first necessary to determine the essential elements of a constructive trust, or trust *ex maleficio*. It is said in Pomeroy's Equity Jur. (3d Ed.) sec. 155, that constructive trusts are raised by equity for the purpose of working out right and justice, where there was no intention of the party to create such relation, and often contrary to the intention of the one holding the legal title. All instances of constructive trusts may be referred to what equity denominates fraud, either actual or constructive, including acts or omissions in violation of fiduciary obligations. If one should obtain the legal title to property, not only by fraud or by violation of confidence, or of fiduciary relations, but in any other unconscientious manner, so that he cannot equitably retain the property which really belongs to another, equity carries out this theory of a double ownership, equitable and legal,

by impressing a constructive trust upon the property in favor of the one who is in good conscience entitled to it, and who .is considered in equity as the beneficial owner. In order, however, to prove a constructive trust, the evidence submitted must be clear, full, and convincing. (39 Cyc. 633.) If doubtful and unsatisfactory, it will not be deemed sufficient to overcome written muniments of title.

What was the proof upon which plaintiffs based their right of recovery? The only witness on the stand, other than the parties, was Mrs. Rebecca Condry. Her testimony, however, had little or nothing to do with the main issue, and concerned merely the giving of the two oil and gas leases, the first to Dannenberg, the second to Whitehill. Upon the testimony of the plaintiff, Dannenberg, plaintiffs must recover, if at all. This evidence we have scrutinized with much care, and find it far from satisfactory, when tested by the rule above announced. He testified that Hogue and Hayden were interested in the first oil and gas lease obtained from Mrs. Condry in November, 1905. This lease, however, according to its terms, was made in favor of Dannenberg, who alone paid to Mrs. Condry the $800 cash consideration. Whether Hayden was to pay a part of this consideration is not clear, even from Dannenberg's testimony, while Hayden testified positively that at no time. had he any interest in the lease made to Dannenberg, and it was not even claimed by plaintiffs that Hayden at any time paid, or was asked to pay, any part of the $800 consideration. In one place witness testified that the second lease was to be taken to Whitehill, while at another place his testimony shows that said lease was to be taken in the name of each of the four parties, Dannenberg, Hogue, Hayden, and Whitehill, and that each was to have a one-fourth interest in it. This testimony is met by the equally positive testimony of Hayden, who swore that at no time had he any agreement with Dannenberg or Hogue relative to an interest in the Whitehill lease, but that the transaction was simply a sale, brought about by him, of Dannenberg's lease to Whitehill, the agreement being that a new lease was to be procured from Mrs.

Condry. On the 4th day of December, 1905, Whitehill paid
Dannenberg the $800 that he had theretofore paid Mrs. Condry,
and on the 16th day of December, following, the latter executed
to Whitehill an oil and gas mining lease on the 80 acres of land
previously included in the Dannenberg lease, which was ap-
proved by the Secretary of the Interior on May 16, 1907. Hogue
procured both leases from Mrs. Condry. His testimony, given
in explanation of why the second lease came to be taken in the
name of Whitehill alone, was purely hearsay, and should have
been excluded by the trial court. It involved statements of what
Dannenberg had told the witness that Hayden or Whitehill had
said. Hogue's only other testimony, material to the controlling
issue, is that in a conversation with Hayden sometime after-
wards, he asked him why he did not have the lease made out to
Dannenberg and the witness, Hogue, and further asked if he
would assign them an interest, and that Hayden "did not seem
to want to talk about it much," and that before the conversation
was concluded a fire broke out in town, and the conversation
was thus interrupted. Hayden testified that the first he knew
that Dannenberg claimed an interest in the Whitehill lease, or
in the working contract with Whitehill, was some two years
afterward when oil properties in that vicinity began to be valu-
able on account of a discovery on the Gunnenberg lease nearby
the Whitehill lease. The plaintiffs offered no testimony in re-
buttal. With full knowledge on the part of Hogue that the new
lease, taken after Dannenberg had been fully reimbursed for his
outlay, was in the name of Whitehill alone, it is difficult to recon-
cile these admitted facts with the testimony of the plaintiff, Dan-
nenberg. With this knowledge on the part of Hogue, and the
stringent provision in the Whitehill lease, whereby it was cove-
nanted that "no sublease, assignment, or transfer thereof, or
of any interest therein, could be directly or indirectly made, with-
out the written consent of both the lessor and the Secretary of
the Interior first obtained, and that any assignment or transfer,
made or attempted without such consent, should be void," it is
not easy to understand how the parties could have intended

that the plaintiffs were to have an interest in the lease. At least, it makes out a case requiring strong and convincing evidence, being unusual and contrary to usual business methods. We are speaking now of the lease, and not of the subsequent contract, for it is to the former that plaintiffs' testimony is directed, though the recovery allowed, as evidenced by the court's findings, was not as to an interest in the lease, but in the working contract. The evidence in this behalf all rested in parol, and its purpose was to establish rights not provided for either in the lease or working contract, though the former was procured by one of the plaintiffs, after reimbursement to his associate for his outlay. We are constrained to hold that the proof offered for this purpose was insufficient, and that there was no sufficient evidence upon which to base the court's findings made at the instance of the plaintiffs. The character of evidence necessary for such purpose was wanting. The exact question, as to the kind of proof required to establish either a constructive or resulting trust, does not appear ever before to have been passed upon by this court, though in *Hope v. Bourland*, 21 Okla. 864, 98 Pac. 580, which was a suit to reform a deed, the court, quoting from the language used by Justice Story in *United States v. Monroe*, 5 Mason 572, said:

"In cases of asserted mistake in written instruments it is not denied that a court of equity has authority to review the instrument. But such a court is very slow in exerting such authority, and it requires the strongest, clearest evidence to establish a mistake. It is not sufficient, that there may be some reason to presume a mistake. The evidence must be clear, unequivocal and decisive."

In *Moore v. Adams et al.*, 26 Okla. 48, 108 Pac. 392, it was held, in cases where fraud was alleged in the procurement of the execution of written instruments or deeds, that the proof must sustain the allegations by a preponderance of the evidence, so great as to overcome all opposing evidence and repel the opposing presumptions.

Confined particularly to the case of trusts, the rule is stated in Pomeroy's Equity Jur. (3d Ed.), sec. 1059, as follows:

"The existence of a constructive trust, as of a resulting one, must be proved by clear, unequivocal evidence."

In the reported cases, the same general rule is observed, the language differing not materially. In *Bradley v. Bradley,* 119 Mo. 58, 24 S. W. 757, it is said that the evidence should be "so clear, definite, and probative as to leave no ground for reasonable doubt." "Evidence must be clear and explicit," *Jennings v. Shacklett,* 30 Gratt. (Va.) 765; "clear, cogent and explicit," *Moorman v. Arthur,* 90 Va. 455, 18 S. E. 869; "clear, strong and convincing," *Mannix v. Purcell,* 46 Ohio St. 102, 19 N. E. 572, 15 Am. St. Rep. 562, 2 L. R. A. 753; "clear, strong, unequivocal and unmistakable." *Bell v. Edwards,* 78 S. C. 490, 59 S. E. 535; *Logan v. Johnson,* 72 Miss. 185, 16 So. 231; *Hutton v. Cunningham,* 28 Ind. App. 295, 62 N. E. 644; "clear, convincing and satisfactory," *Carter v. Carter,* 14 N. D. 66, 103 N. W. 425; "clear, full and convincing," *Mason v. Harkins,* 82 Ark. 569, 102 S. W. 228; "clear, full and satisfactory," *Gilbert Bros. & Co. v. Lawrence Bros.,* 56 W. Va. 28, 49 S. E. 155; "clear, unequivocal and convincing," *Columbia Nat. Bank v. Baldwin,* 64 Neb. 732, 90 N. W. 890; "full, clear and convincing," *Snider v. Johnson,* 25 Ore. 328, 35 Pac. 846; "a bare preponderance of parol evidence is not sufficient. It must show the existence of the trust beyond reasonable controversy," *Chambers v. Emery,* 13 Utah, 374, 45 Pac. 192; "the proof must not only be clear, certain, and conclusive, but so cogent as to leave no reasonable doubt in the mind of the trier of the facts," *Metcalfe et al. v. Sackman,* 66 Wash. 58, 120 Pac. 84; "clear and unequivocal evidence," *Gignon v. First Nat. Bank,* 22 Mont. 140, 55 Pac. 1051; where the evidence rests in parol it "must be very clear and satisfactory, and find some support in the surrounding circumstances and in the subsequent conduct of the parties," Cooley, J., in *Crissman v. Crissman,* 23 Mich. 216; Perry on Trusts, secs. 137, 226; 13 Enc. of Ev., secs. 146, 155.

It cannot be said that the evidence of plaintiffs meets the foregoing requirements. The *onus* of establishing a trust rested upon those who sought its enforcement, and before a court of equity will be warranted in making a decree therefor, the evi-

dence must be clear, unequivocal, and decisive. The general rule, that the finding or judgment, where there is any evidence reasonably tending to support either, will not be disturbed on appeal, has no application in such cases.

There being no sufficient testimony to warrant the court's findings or the decree entered thereon, the judgment of the trial court is reversed, and the cause remanded, with instructions to enter a final order dismissing plaintiffs' petition, and to award defendants their costs.

By the Court: It is so ordered.