[No. 3,899.]

## JOHN F. McCAULEY v. OBED HARVEY.

ADMINISTRATION ON AN ESTATE.—If an administrator of an estate is appointed and qualifies, and afterwards, without his removal (a will having been found), another person is appointed administrator with the will annexed, and qualifies, the latter appointment supersedes the former administration, and the acts of the administrator with the will annexed are valid.

OBJECTIONS TO THE VALIDITY OF PROBATE SALE OF LAND.— If the Probate Court acquires jurisdiction to direct a sale of the real estate left by the deceased, and the same is sold by the administrator with the will annexed, and a deed given to the purchaser, objections, that the claim to pay which the sale was made was not a debt for which the land stood charged under the will, and that it was not presented to the administrator for allowance, should be taken in the Probate Court, or by appeal, and cannot be raised in a collateral action to partition the land.

CONFLICT BETWEEN SALE BY HEIRS AND BY PROBATE COURT.—If the grantee of a Mexican grant petitioned for its confirmation, and died during the pendency of the proceedings, and his children were substituted in his place, and the confirmation was made, and the patent issued to them, as his heirs, a sale of the land made under the direction of the Probate Court before the patent issues, will confer on the purchaser a better right than the heirs possess, and a Court of equity will inforce such right against the heirs, or a purchaser from them.

LIMITATION OF ACTIONS AS BETWEEN TENANTS IN COMMON.—If the possession of one, as a tenant in common, is not disturbed by his co-tenants, and there have been no acts of exclusion equivalent to an ouster by his co-tenants, they cannot claim the benefit of the Statute of Limitations as against his right or title.

APPEAL from the District Court, Sixth Judicial District, County of Sacramento.

In 1844, the government of Mexico granted to Anastacio Chabolla eight square leagues of land, situated on the banks of the Cosumnes southward, measuring two leagues upon the San Joaquin river by four upon the plain eastward. The grant passed only an equitable title. On the 16th day of October, 1852, Chabolla filed a petition before the Board of Land Commissioners for the confirmation of the grant. On the first day of December, 1852, he died, leaving his wife, Maria Josefa Higuera de Chabolla, and seven children. The wife and children were substituted after Chabolla's death; and the wife having died in June, 1855, the

seven children were substituted by name. The grant was confirmed to the children by the District Court of the United States, to which the case had been appealed, on the 10th day of May, 1856. A patent was issued for the confirmed grant on the 30th day of May, 1865. The following was the granting clause in the patent :

"Now, know ye, that the United States of America, in consideration of the premises, and pursuant to the provisions of an Act of Congress aforesaid of 3d of March, 1851, have given and granted, and by these presents do give and grant unto the said heirs of Anastacio Chabolla, deceased, and to their heirs, the tract of land embraced and described in the fifteenth section of the said Act of confirmation of this said claim ; and this said patent shall not affect the interests of third persons, to have and to hold the said tract, with the appurtenances, unto the said heirs of Anastacio Chabolla, deceased, and to their heirs and assigns forever, with the stipulation aforesaid."

There had been a previous recitation in the patent of the death of Chabolla and his wife, and that the children, giving their names, were the heirs of Chabolla.

On the 11th day of June, 1855, John Yontz, then Public Administrator of the County of Santa Clara, (of which county Chabolla was a resident when he died,) received letters of administration upon the estate of Chabolla. In August, 1856, upon the expiration of his term of office, he, by agreement with Coldwell, his successor, turned over the property of the estate in his hands to Coldwell, and an order to that effect was entered in the Probate Court of Santa Clara county, but Yontz did not resign nor was he removed as administrator, nor was any order made directing letters to issue to Coldwell, nor were letters issued to him. In December, 1859, an order was made by the Probate Court that Coldwell be discharged upon the payment of the costs of administration, but he did not pay the costs. Chabolla left a will, in which the following clauses occur:

"My wife sold, without my consent, to Mr. Charles Weber, heretofore a resident of San Jose, the ranch heretofore mentioned, for the sum of five thousand dollars. The

sale I disapproved of the moment it came to my knowledge, and said disapproval I confirm in this my last will, and declare said sale to be null and void.   But as I do not believe it just that the said Mr. Charles Weber should lose the sum he gave, I ordain that when my executors collect the debt owing to me by Mr. Joaquin Ortega of eight hundred cows with calf, a part of said cattle be sold to complete the sum of five thousand dollars, and the same to be delivered to said Charles Weber or heirs.

"Having meditated with more consideration, I do now ordain relative to the manner of paying Mr. Charles Weber his five thousand dollars that he gave my wife.   I revoke the previous manner of paying, and order that he be paid by my executors with said cattle, or any other property they deem convenient, in case my wife does not pay of her own accord.

"Santa Barbara, November 25, 1852."

By the will he nominated his wife and Antonio Señal his executors.   Charles Weber was appointed administrator of the estate of Chabolla, with the will annexed, and the will was, on his petition, admitted to probate on the 26th day of June, 1861.   He was the same Weber mentioned in the will.   On the 15th day of December, 1854, Maria Josefa Higuera de Chabolla, the wife, by deed of that date, sold and conveyed to William Govers all her interest in the grant.   Prior to the probating of the will, the children had sold to divers persons their respective interests in the grant, and whatever title they conveyed had been acquired by defendant Harvey.   Wm. Hicks acquired from Govers the interest sold by the wife.

On the 5th day of July, 1861, Weber, the administrator, petitioned the Probate Court for an order of sale of the grant for the payment of the legacy or bequest or charge in his favor contained in the will.   On the 31st of August, 1861, a decree was entered authorizing the sale of seven eighths undivided of the grant, but reserving from sale the undivided one eighth, being the interest of Policarpia, one of the daughters and heirs.   Why this reservation was made does not appear.   By the will Chabolla de-

vised the grant to his wife and seven children in equal proportions, undivided. At the time Harvey and others purchased the interests of the children and wife, it was supposed that the wife and heirs held by the statute of descents and distributions, and that the wife had inherited one third, and the children the other two thirds. When the administrator with the will annexed sold, defendant Harvey purchased for $9,450, with the understanding that each person who had purchased from the wife and children, by paying to him such portion of the $9,450 as upon the basis of the wife having inherited one third, and the children the remaining two thirds, he would own in the grant. The persons who had thus purchased paid Harvey each his proportion, and he conveyed to them according to the understanding. The object of this was to protect the purchasers from the wife and children, and avoid a conflict with a purchaser at the administrator's sale. The grant contained 35,800 acres, and Harvey, under said arrangement, conveyed to Hicks, who had acquired the wife's interest, $\frac{11895}{31100}$ of the seven eighths undivided he acquired at the Weber sale. Hicks had a small interest which he had acquired in the undivided one eighth which was not sold by Weber. Hicks mortgaged his interest in the grant to McCauley, who assigned the mortgage to Tevis. Tevis foreclosed the mortgage; the land was sold and bid in by McCauley, who obtained a sheriff's deed in March, 1868. On the 18th day of January, 1869, McCauley commenced this action for a partition of the grant. There were about one hundred defendants. In the original complaint, McCauley merely averred the legal title in himself and his co-tenants. On the 8th of July, 1870, he filed an amended complaint, in which he recited all the facts concerning the different conveyances and the sale by Weber. On the 20th day of February, 1872, the plaintiff filed, by leave of the Court, another amendment, in which he averred that by the sale of Weber, Harvey and his grantees had acquired an equitable interest in the land sold to Harvey, and that the patentees and their grantees held the legal title as naked trustees, for the use of the pur-

chasers at the administrator's sale, made under the will. The defendants objected to this last amendment, but the Court overruled the objection and allowed it to be filed. The Court below, by the interlocutory decree, directed the grant to be partitioned, by giving to the purchasers from Policarpia, the undivided one eighth, in proportion to their ownership, and by giving to the purchasers from Harvey and their assigns, the seven eighths bought by him at the administrator's sale. The defendants appealed from the interlocutory decree. They claimed that the former administration of Yontz, was pending when Weber was appointed and made his sale, and that, by his will, Chabolla had merely recognized the $5,000, which he directed to be paid to Weber as a debt; that he had not made it a charge on the land, and that it should have been presented for allowance like any other claim against the estate, and that, therefore, the sale by the administrator was void. They also claimed that the children, the patentees, acquired by the patent the legal title, and that the Statute of Limitations had run as against the purchasers at the Weber sale. If the Court had directed a partition according to the interests held by the purchasers from the patentees, Mc-Cauley in the partition, would have received but a small tract of land, less than a thousand acres, and the defendants who appealed would each have received a greater amount than he obtained.

*Wm. Matthews, G. W. Spaulding, Beatty & Denson, P. Dunlap,* and *J. H. McKune,* for the Appellants.

The legal title to the *locus in quo* is in the patentees or their grantees. (*Lestrader* v. *Barth,* 19 Cal. 771; *Penniman* v. *Emeric,* 26 Cal. 119; *Reed* v. *Spence,* 21 Cal. 511; *Minturn* v. *Brower,* 24 Cal. 669; *Clark* v. *Lockwood,* 21 Cal. 221; *Grattan* v. *Wiggins,* 23 Cal. 37; *O'Connel* v. *Dougherty,* 32 Cal. 463.)

The equitable title to the land is derived through the will of Anastacio Chabolla. But it is claimed that the legal title to seven eighths of the premises passed by sale of C. M. Weber, administrator, to Harvey on the 4th day of March, 1862.

The proceedings in Probate Court, under which plaintiff claims, have the following infirmities:

1. The first administrator was not removed, and the Probate Court had no power to order the affairs of an estate into the hands of another. This is jurisdictional. (*Estate of Hamilton*, 34 Cal. 468.)

2. But if the second administrator took by right, he was never removed, and only took an order discharging him on payment of costs, which were never paid, and he was still administrator when Weber applied, and the appointment of Weber was void. (*Haynes* v. *Meeks*, 20 Cal. 310.)

· But the title on the death of Chabolla, vested in his legatees, eight in number, share·and share alike, subject to an equitable lien for the payment of the debts of the testator. (*Brenham* v. *Story*, 39 Cal. 179.) The legatees and their grantees hold an indefeasible title, subject to be sold for the payment of the debts of the testator in satisfaction of such lien. The executors, by the will, had a discretion to pay the $5,000 out of any property they deemed convenient; this discretion was personal to themselves, and it was not made a charge on the land. The $5,000 was not a legacy, but by the terms of the will it is made a debt. The testator, in substance, provides for getting the cows of Ortega and paying the debt, but on further consideration allows the executors to pay it with said cattle or any other property. This simply makes that a debt against his estate which before could not be enforced. Being a debt, it must have been presented in due time to the administrator, or it would be barred, and a debt barred by the Statute of Limitations could not be enforced by sale of the estate upon the pretense that it was a legacy.

It is said that the appointment of Yontz and Coldwell did not impair the jurisdiction of the Probate Court to appoint Weber, and that the appointment of Weber, *ipso facto*, determined the power of Yontz. This proposition is held in the negative in *Haynes* v. *Meeks*, 20 Cal. 310; *Willis* v. *Farley*, 24 Cal. 490.

It is said that the several orders of the Probate Court resulting in a sale to Harvey were appealable, and no appeal

having been taken in one year, they are conclusive. But against whom are they conclusive? Not surely as against these defendants, who were not made parties, who could not appeal, and who had their titles and possession under them long before the sale.

The claim of Weber, referred to in the will, either was a debt, or it was not. If it was, it should have been presented to the Public Administrator within the time prescribed by law. If it was not, and was a legacy, the land of appellants could not be sold to pay it.

The authorities are conflicting upon the question whether a *cestui que trust* can go into equity and compel partition, treating his title as a legal one. (*Agar* v. *Fairfax*, 17 Ves. 533; 3 Johns. Ch. 302.)

In the original complaint, the plaintiff claimed the legal title to fourteen thousand and sixty-one acres, without deraigning that title. In the amended complaint, filed July 8, 1870, he still claimed the legal title, but set out certain facts which he now insists gave him an equity only. But he did not claim that the defendants were his trustees. At that date, the Statute of Limitations had run its course, and the right to sue the defendants as trustees was gone. (*Love* v. *Watkins*, 40 Cal. 547.)

The trust terminated and the statute began to run when the property was sold by the heirs. (*White* v. *White*, 1 Johns.—Md.—Ch. 56; *Finney* v. *Cochran*, 1 Watts & Sargent, 118; *De Conche* v. *Savilier*, 3 Johns. Ch. 60; *Buchan* v. *James*, Spear's Ch. 375.)

*George Cadwalader*, for the Respondent.

The appointment of Weber as administrator was valid until reversed on appeal. (Probate Act, Secs. 48, 98, and 306; *Haynes* v. *Meeks*, 20 Cal. 310.)

Appellants assert the order of sale to be void, because it was based upon a debt not presented to either Yontz or Coldwell for payment during their administrations, and because the Probate Court could not affect the property while in their hands. The appellants claim under the will, and insist upon its validity. If the will were out of

the way there would be no question but what the widow took one third of the estate, and that this passed by her deed to Govers, from him to Hicks, and from Hicks to plaintiff. The question then arises, can persons claiming under the will take the beneficial and escape the onerous part of it? We think not. The will made the sum of five thousand dollars a charge on the estate devised, in favor of Charles M. Weber. It was not a debt in any sense.

The relation of debtor and creditor did not exist between Chabolla and Weber, but he thought it wrong that Weber should lose the money that he paid his wife, so he directed his executors in the first part of the will to sell enough of the eight hundred cows due him by Ortega to pay Weber five thousand dollars; and in the last part of his will he changes his mind, revokes the previous method, and directs them to pay this sum out of the cattle or any other property. Now this was a simple bequest, made a charge upon the estate by will, and subject to which the children took their portion of their father's property. This, to be operative, depended upon the death of Anastacio and his will being proven. (*Castro* v. *Richardson*, 18 Cal. 480.) The 176th section of the Practice Act was authority to the Probate Court to sell the real estate to pay the bequest to Weber, and it was sold to Harvey, and the sale confirmed by the Probate Court. Now it is perfectly apparent that at the best for appellants these proceedings could not have been worse than voidable—that is subject to reversal or modification on appeal, and not having been questioned in this manner are conclusive and binding, as was said in the *Estate of Spriggs* (20 Cal. 121), "upon all parties interested in the estate."

We could concede that Weber had been paid or that the bequest to him was a debt, and still the proceedings of sale and confirmation to Harvey are exempt from collateral attack. (*Boyd* v. *Blankman*, 29 Cal. 19; *Haynes* v. *Meeks*, 20 Cal. 288.) As long as the plaintiff or his grantor was on the land, there was no adverse holding, which according to the doctrine of the case of *Love* v. *Watkins* (40 Cal. 569), prevents the statute from operating. The purchasers from

the children were simple purchasers from heirs. The title of the heirs rested upon the will, and the will created the charge in favor of Weber.

*J. P. Hoge,* also for the Respondent.

In support of the proposition that the legal title vested by the patent in the heirs of Chabolla passed by inurement, and upon the principle of relation and estoppel, immediately to the purchaser under the father, Anastacio Chabolla, the original grantee of the Mexican Government, and who presented his petition to the Land Commissioners for the confirmation of the claim, under the Act of 1851, I refer to the following authorities: Probate Act, Sec. 172, 2 Hittell, 5890; *Landes* v. *Brandt,* 10 Howard U. S. 370, *Stoddart* v. *Chambers,* 2 Howard, 317; *Beard* v. *Federy,* 3 Wallace U. S. 491; *Hogan* v. *Page,* 2 Wallace, 605; *Hornsby* v. *United States,* 10 Wallace, 224–241; *Steinbach* v. *Stewart,* 11 Wallace, 575; *Lessee of French* v. *Spencer et al.,* 21 Howard, 239–40; *McCarthy* v. *Mann,* 19 Wallace, 20; *Carpenter* v. *Rannels,* 19 Wallace, 138.

By the Court, WALLACE, C. J.:

1. The appointment of Weber as administrator with the will annexed, superseded *per se* all former administrations of the estate.

2. The proceedings in the Probate Court resulting in the sale made by Weber as administrator with the will annexed, were not defective in point of jurisdiction; and the other objections urged against the sale, even if they could have been maintained, should have been taken in the Probate Court or by appeal.

3. McCauley relies upon the sale made under the directions of the Probate Court, and in due course of administration, of the estate of Chabolla. The defendants, upon the other hand, claim through conveyances made by the heirs of Chabolla anterior to the probate sale, and a subsequent confirmation and patent from the United States Government, running directly to their grantors as such heirs.

It is the settled doctrine of this Court that in such a case the sale made under the direction of the Probate Court confers the better right, and one which a Court of equity will, on proper application, enforce against the heir, or a purchaser from the heir. (*Hartley* v. *Brown*, 46 Cal. R. 201, and cases there cited.)

It only remains, therefore, to consider whether the Statute of Limitations, relied upon by the defendants, is effectual to bar the relief awarded to McCauley by the decree, and we think that this question must be answered in the negative. McCauley's possession of the premises, as a tenant in common with the defendants, had never been disturbed; no ouster had occurred, and no acts of exclusion upon the part of the defendants, equivalent to an ouster, had taken place.

It is apparent that, under such circumstances, the Statute of Limitations has no application. A person all the while in possession according to his right, cannot, while holding the possession, be divested of that right in favor of another. If authority be needed in support of a proposition so self-evident, it may be found in *Love* v. *Watkins*, 40 Cal. 547.

In this view it becomes unnecessary to inquire whether the equities of McCauley are to be considered as having been alleged in the complaint as originally filed, or only at a subsequent period in the progress of the cause, for in either case the Statute of Limitations would not avail the defendants.

Judgment affirmed.