## SNIDER *v.* JOHNSON.

[S. C. 35 Pac. 846.]

1. RESULTING TRUST — STATUTE OF LIMITATIONS.— The statute of limitations does not begin to run against an action to establish a resulting trust in lands until the *cestui que trust* in possession has been ousted.

2. PAROL EVIDENCE TO ESTABLISH A RESULTING TRUST.— Parol evidence is admissible to establish a resulting trust in land in favor of one paying the purchase price therefor, where another takes the legal title, notwithstanding a recital in the deed that the consideration was paid by the grantee, but the evidence of it must be clear and convincing, and if attended by doubt and uncertainty the writing must remain the highest and best evidence.

3. EVIDENCE OF RESULTING TRUST.— Where the testimony was conflicting as to whether land was bought with a mother's or her son's money, whether the bond for a deed was taken in her name for herself or to protect his interests as a minor, and whether she directed the deed to be made to him or to her, and the evidence showed that at her request the bond for a deed was never recorded, that the deed was made to the son, and that she delayed over twenty years before she demanded a deed to herself in accordance with his bond, a trust on behalf of the mother is not established.

APPEAL from Douglas: H. K. HANNA, Judge.

This is a suit by Elizabeth Snider against John Y. E. Johnson and wife to establish a resulting trust in land. The facts show that one Solomon Abraham, on May twentieth, eighteen hundred and sixty-nine, was the owner of lot eight, block twenty-seven, in Roseburg, Douglas County, Oregon, and on that day executed and

delivered to plaintiff a bond for a deed, in which he
covenanted to convey to her the legal title thereto in con-
sideration of two hundred and seventy-five dollars, of
which one hundred dollars was then paid, and the re-
mainder was evidenced by plaintiff's note payable in
one year.  This bond was delivered to the county clerk
of said county, but, by plaintiff's order, was not recorded.
Abraham and his wife, on February fourteenth, eighteen
hundred and seventy, in consideration of the payment
of said note, conveyed said lot to the defendant John Y.
E. Johnson, plaintiff's son, who was then aged about
twenty years, and the deed therefor was on June twenty-
third, eighteen hundred and seventy, duly recorded in
said county.  The plaintiff, about June, eighteen hundred
and sixty-nine, moved into an old house on the north half
of said lot, and occupied it until·about October, eighteen
hundred and seventy-five, when she moved into a new
one erected upon the south half, where she resided until
about September, eighteen hundred and eighty-three,
when she removed to a new house built on the north
half, which she occupied until about September, eighteen
hundred and eighty-seven, at which date she went to
Portland, Oregon, to make an extended visit.  The de-
fendant, John Y. E. Johnson married the defendant Eliz-
abeth Johnson on March ninth, eighteen hundred and
eighty-seven, and moved into the house on the south
half, but, after the plaintiff went to Portland, occupied
the one on the north half; and, when the plaintiff
returned in May, eighteen hundred and eighty-eight,
she was obliged to live in the building on the south half.
The plaintiff alleges that she paid the consideration to
Abraham for said lot, and, after the bond was executed,
entered into a contract with her son, by which it was
agreed that he should receive the legal title to the south
half, in consideration of his living with and aiding plain-

tiff in the support of her family, and applying what he could spare from his wages to the payment of the consideration; and further that the defendant had notice and knowledge of plaintiff's claim of ownership of the north half of said lot at the time said deed was executed, and has repeatedly admitted that he held the title in trust for, and promised to convey it to, her; and that, relying upon his admissions and promises, she has been lulled into security in consequence of which, and of her ill health, she had not commenced any proceedings to recover the title thereto until this suit was brought; and that, upon the execution and delivery of said bond, the plaintiff, in pursuance thereof, entered upon the north half of said lot, and ever since has been, and now is, in the actual, open, exclusive, and uninterrupted possession thereof.

The defendant, after denying the material allegations of the complaint, in substance alleges that said bond was taken in plaintiff's name for his use and benefit, and with the direct agreement that said lot should be conveyed by Abraham to him; that he paid the entire purchase price, and that said Abraham, with the consent and by direction of plaintiff, conveyed said premises to him; that he has, since the execution of said bond, been in the open, notorious, adverse, and exclusive possession thereof under claim of ownership; and that plaintiff's alleged cause of suit did not accrue within ten years prior to the commencemet thereof; and that he has made improvements of the value of sixteen hundred and twenty dollars, and paid the taxes, amounting to one hundred and ten dollars, while in possession of the north half, which has enhanced the value thereof to that extent. The reply denied these allegations of new matter, and the cause, being at issue, was referred to John Hamilton to take the testimony, and, upon the report thereof, the court found that the equities were with the plaintiff, and

that defendant held the legal title to the north half of said lot in trust for her, and decreed a deed of conveyance thereof, together with the costs and disbursements of the suit, from which the defendant appeals.

Reversed.

*Mr. J. W. Hamilton*, for Appellants.

*Mr. E. B. Preble*, for Respondent.

Opinion by Mr. Justice Moore.

1.  The defendant contends that the plaintiff, having set up her cause of suit upon an alleged resulting trust, the plea of the statute of limitations may be interposed in bar thereof. The principle is elementary that time does not bar a direct trust when the relation of trustee and *cestui que trust* is admitted to exist, (*Manaudas* v. *Mann*, 22 Or. 525, 30 Pac. 422,) but courts will not enforce a resulting trust after a great lapse of time, or laches on the part of the supposed *cestui que trust:* Perry on Trusts, § 141. There is, however, an exception to the application of this general rule in favor of a *cestui que trust* in possession of an estate. In such case the statute does not begin to run until he has been ousted: *Gilbert* v. *Sleeper*, 71 Cal. 290, 12 Pac. 172; *Lakin* v. *Sierra Buttes Mining Co.* 25 Fed. 347; *Love* v. *Watkins*, 40 Cal. 569, 6 Am. Rep. 624; *McCauley* v. *Harvey*, 49 Cal. 497; *Altschul* v. *Polack*, 55 *Id.* 633. The record shows that plaintiff occupied the north half of said lot from eighteen hundred and sixty-nine to eighteen hundred and eighty-seven, except when a new house was being built thereon, and from eighteen hundred and seventy-five to eighteen hundred and eighty-three; and that she had never been denied the possession thereof until eighteen hundred and eighty-eight, and therefore the statute of limitations did not begin to run until that time.

2.   Where one purchases land with the money of another, and takes the title to himself, the courts presume from the transaction of the parties that a resulting trust arises in favor of him whose money paid for it: *Parker* v. *Newitt*, 18 Or. 274, 23 Pac. 246; 1 Perry on Trusts, § 26; and parol evidence is admissible to establish such a trust, notwithstanding a recital in the deed that the consideration was paid by the grantee: *Chenoweth* v. *Lewis*, 9 Or. 150. "The admission of parol evidence to establish a resulting trust has been often said to be 'one of the mistakes of a court of equity.' To raise a trust not expressed in the writing, the evidence of it must be full, clear, and convincing. If it is attended by doubt and uncertainty, the writing must remain the highest and best evidence": *Lee* v. *Browder*, 51 Ala. 288; *Baker* v. *Vining*, 30 Me. 121, 50 Am. Dec. 617; *Whitmore* v. *Learned*, 70 Me. 276; *Parker* v. *Snyder*, 31 N. J. Eq. 164; *Boyd* v. *McLean*, 1 Johns. Ch. 582; *Rogers* v. *Rogers*, 87 Mo. 257; *Clark* v. *Pratt*, 15 Or. 304, 14 Pac. 418.

3.   Considering the evidence in the case at bar for the purpose of determining its sufficiency under this rule, we find that the plaintiff admits in her testimony that fifty dollars of the amount paid when the bond was executed was realized from the sale of stock that the defendant had earned by his labor, but she claims that because he was then a minor this property was hers; that the other fifty dollars then paid she received from her husband's estate; that in order to obtain funds for the payment of the note, she did work for which she received from one person forty-seven dollars; that she did the washing for thirteen men and one woman, and that every five dollars that she obtained she deposited with Dr. S. Hamilton, and earned enough by transient washing to support her family; that she let a building on the south half of the lot, and the rents therefrom, together with every five or ten dollars

that her son could spare, made up the amount to pay off the note; and when this amount was raised she sent her son to Oakland, Oregon, to pay it to Abraham; that M. M. Melvin, the county clerk to whom she had delivered the bond, brought the note and deed to her, and, when she discovered that the property was conveyed to her son, she refused to accept the deed, and directed Melvin to return it to Abraham. Melvin testified that he never saw the deed, and that plaintiff never told him to take it back to Abraham, or said anything about the bond after it had been delivered to him till this suit was commenced. The defendant testified that his father died in eighteen hundred and fifty-two, while crossing the plains, and that his mother married George W. Snider about eighteen hundred and fifty-five; that he lived with them till the summer of eighteen hundred and sixty-four, when he left home for the reason that his presence seemed to cause trouble between his mother and stepfather; that his stepfather died in eighteen hundred and sixty-five, leaving his mother with three small children, and that another was born soon after his death, all whom were girls; that upon Mr. Snider's death, his mother invited him to return and aid her in the support of her family, and then told him that he might keep whatever he could earn by his labor, and that thereafter he received his earnings and invested them in what he needed; that his mother at that time was very poor, and had no means except such as she received from her labor; that in eighteen hundred and sixty-nine he and his mother had a conversation in regard to the purchase of a home, and, learning that Abraham had a lot for sale, it was agreed that he should purchase it, but, being a minor, it was further agreed that his mother should take the bond therefor in her name, to protect his interests; and that she would instruct Abraham to make the deed to him when the purchase

price was paid; that he worked and earned fifty dollar; by sawing wood and other labor, which, with the fifty dollars realized from the sale of the cattle, constituted the one hundred dollars paid at the time the bond was executed; that he deposited his earnings with his mother and with Dr. S. Hamilton, until he had a sufficient amount to discharge the note, when he drew the money, paid it to Abraham at Oakland, and told him to execute the deed as his mother had instructed him; that he paid the whole consideration, and that his mother never paid any part thereof.

Solomon Abraham testified that while he could not remember the details of the transaction, he believed, from his careful method of doing business, that a deed made by him to Johnson must have been by his mother's direction; that he was living in Oakland at the time the deed was executed, but moved to Roseburg in eighteen hundred and seventy-five, and lived one block from the plaintiff's home till eighteen hundred and ninety; and during that time she never said anything to him about the deed till May ninth, eighteen hundred and ninety, when she demanded from him a conveyance of the whole lot, but at Portland, in the fall of that year, she demanded a deed for only one half of the property. J. H. Snider, plaintiff's stepson, testified that he lived with the plaintiff during the years eighteen hundred and sixty-eight and eighteen hundred and sixty-nine, and that she many times said she was going to have the property deeded to her son. The plaintiff and her daughters testified that the defendant had frequently promised to convey the north half of said lot to his mother, and Laura La Forest testified that she heard him at one time make this promise. This the defendant denies. But these promises if made at all, the testimony shows, were made after the conveyances, and hence could not create a

a resulting trust. To create such a trust the promise must have been in force at the time the deed was delivered. "And," says Mr. Perry in his work on Trusts, section 140, "if the nominal purchaser, under such circumstances should afterwards agree to hold in trust for, or to execute a conveyance to, the person who paid the money, courts would not enforce the agreement, if it was without a new consideration, or voluntary."

The evidence cannot be reconciled upon any theory, and the presumptions and inferences deducible from the acts of the parties must be relied upon for a solution of the question: 1. The bond by plaintiff's direction was never recorded. This fact would seem to support the defendant's theory that his mother was acting for him, and in his interest, and did not desire to make the bond a matter of record. 2. The fact that Abraham made the deed to Johnson is a strong presumption that he did so at plaintiff's request. 3. The fact that plaintiff for more than twenty years never made any demand upon Abraham to comply with the terms of his bond, seems to further show that the deed was executed according to her instructions. From these facts and circumstances it seems clear that the trust has not been established with that character of proof required in such cases, and for that reason the decree is reversed and the bill dismissed.

DISMISSED.