### WILLIAMS v. RENZA et al.

(Fourth Division.  Fairbanks.  August 23, 1910.)

No. 1274.

1. FRAUDS, STATUTE OF (§ 74*)—CONTRACTS FOR SALE OF LAND.
    Plaintiff alleges that defendant Renza orally agreed to and did purchase a certain placer mining claim for him (the plaintiff), but that it was agreed that title should be taken in defendant's name, who should have the profits up to a certain time, when the plaintiff should acquire the property and the title thereto by paying the purchase price so paid by the defendant Renza. *Held*, that it was a contract for the sale of land and, not being in writing, was void.

    [Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 83, 122–131; Dec. Dig. § 74.*]

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

2. Specific Performance (§ 121*)—Evidence.

Equity will not enforce a specific performance of an oral contract by one to purchase land with his own money and thereafter transfer it to another, when the terms of the alleged contract are not established by clear and convincing evidence, where there are no written proofs, no binding obligation is shown to have been assumed by the plaintiff, no time fixed, no consideration paid, no distinct sum agreed upon, and the terms testified to are vague and indefinite.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 387–395; Dec. Dig. § 121.*]

3. Vendor and Purchaser (§ 3*)—Contracts—Options.

An option contract is a contract which gives the party a right to purchase the thing to which the contract pertains. Usually, when applied to real estate, the party securing the option forfeits whatever he pays for the option in case he elects not to purchase the property, but he does not incur any liability for breach of contract, for he has merely secured an option to purchase. A contract for the sale of land is one where one party agrees to buy and the other agrees to sell, and each one would be held responsible in damages for a breach of the contract.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 3; Dec. Dig. § 3.*]

4. Vendor and Purchaser (§ 93*)—Rescission—Default of Vendee.

The vendor in a contract to convey upon payment of the purchase price cannot declare a forfeiture for failure of the purchaser to pay, so long as he is himself unable to perform, by tendering such a title as the contract requires.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 153, 154; Dec. Dig. § 93.*]

This is an action to declare a trust in real estate and for an accounting. The plaintiff alleges, among other things, that in December, 1908, William Barclay, J. E. Barrack, and T. H. Kelly were owners of an undivided one-seventh interest in the Owl association placer mining claim, consisting of about 140 acres, more or less, situate on Engineer creek, in the Fairbanks recording district, district of Alaska; that the defendant John Renza entered into a verbal agreement with the plaintiff, during the month of November, 1908, whereby the said Renza agreed to purchase the said undivided one-seventh interest in

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

said association claim for the plaintiff, and agreed to advance the purchase price of the said interest for and on behalf of said Williams, and to take the legal title to said property in his own name, and to hold the same in trust for the said Williams until July, 1909, when the said Williams would reimburse Renza for the amount of said purchase price.

The plaintiff further alleges that, in lieu of interest on said advancement to be made by the said Renza, the said Renza was to receive all of the royalties derived from said interest in said association claim from the date of purchase until the 1st of July, 1909, and to hold the legal title as security for the payment of the purchase price thereof.

The plaintiff further alleges that the said Renza did purchase said interest in said property for the plaintiff, but that the said Renza violated his said trust and, during the month of June, 1909, entered into a contract whereby he attempted to convey the said interest in said association claim to the defendant H. H. McDonald, and that, pursuant to said agreement with McDonald, the said Renza executed a deed of the premises, conveying the same to McDonald, and delivered said deed in escrow to the defendant Fairbanks Banking Company, who agreed with said McDonald and Renza to hold the same until the 1st of August, 1909, and then to deliver said deed to said McDonald, providing the said McDonald had on that date, or theretofore, paid in full the purchase price of said interest agreed upon by said defendants McDonald and Renza; and that the said H. H. McDonald paid a portion of the purchase price at the date of execution of said contract and agreed to pay the remainder thereof on or before the 1st of August, 1909.

The plaintiff further alleges that the defendant McDonald had notice that the plaintiff owned said undivided one-seventh interest in said association placer mining claim at the time the said McDonald entered into said agreement with Renza for the purchase of the same.

The plaintiff prays that the defendant Renza be declared to be the owner of the naked legal title of said undivided interest in said association placer mining claim for the use and

benefit of the plaintiff, and that the said Renza be required to make, execute, and deliver to plaintiff a good and sufficient deed conveying said undivided one-seventh interest in said association placer mining claim to the plaintiff upon plaintiff's paying to said defendant Renza, or paying into this court, all of the sums of money advanced by the defendant Renza in the purchase of said interest from said Barclay, Barrack, and Kelly, and that defendant Renza be required to make and render an accounting herein in the premises, and that the contract for the purchase of said property by the defendants Renza and McDonald, and the deed from said Renza to McDonald conveying said property to McDonald, now in the possession of the said defendant Fairbanks Banking Company, be canceled and held for naught, and that it be decreed by this court that the said defendant McDonald has no right, title, or interest of any nature whatsoever in said premises, or any part thereof, and that the said Renza and the said McDonald be restrained from claiming or asserting any right or title in said premises, or from collecting or receiving any royalties from the mining of said claim, and that they be restrained and enjoined by this court from in any wise conveying or incumbering or otherwise disposing of said interest, or any part thereof, and that the Fairbanks Banking Company be restrained and enjoined from delivering said contract of sale or deed, or either of them, to said defendant McDonald.

The defendant Renza, for answer to the plaintiff's complaint, admits that he purchased the property in controversy and paid therefor the sum of $8,750, and took the title in his own name, denies that he purchased the said interest in said claim for Williams, but alleges that he purchased it for himself and with his own money, admits that he contracted to sell said interest to the defendant H. H. McDonald on the 7th of June, 1909, for the sum of $18,000, and admits that the said McDonald paid cash in the sum of $12,000 and agreed to pay the remaining $6,000 on or before the 1st of August, 1909, and admits that he deposited a deed in escrow with the defendant Fairbanks Banking Company, to be delivered to McDonald upon the payment by the said McDonald to the de-

fendant Fairbanks Banking Company, to the credit of defendant Renza, the sum of $6,000.

The defendant McDonald, in answer to plaintiff's complaint, admits the purchase by Renza of said interest from Barclay, Barrack, and Kelly, but denies that defendant Renza purchased same for Williams, and denies that Renza ever held said property in trust for Williams. Defendant McDonald admits that he contracted to purchase the said interest from Renza, and that Renza did deposit a deed in escrow to be delivered to McDonald upon the payment of the remaining portion of the purchase price, but alleges that he did not pay the balance on said purchase price for the reason that the bringing of this action by Williams had clouded the title of Renza to such an extent as to cause it to be not marketable, and that he was advised by his counsel that it would not be safe for him to pay the remainder of said purchase price until the controversy over the title by plaintiff and defendant Renza was settled in this action. Defendant McDonald further alleges that he paid the said $6,000 into the registry of this court, which sum was to be paid to Renza when this court had determined that Renza had a good title to the property as against the plaintiff.

The defendant Renza, for answer to the cross-complaint of McDonald, denies that his title to the property in controversy was clouded in any way by this action, and alleges, among other things, that he made demand of the Fairbanks Banking Company and McDonald for the balance due on the purchase price on the 2d day of August, 1909, and many times thereafter, and in default of the payment of said balance he insisted on a return of his deed from defendant Fairbanks Banking Company.

It is unnecessary to recite further from the pleadings, as the foregoing statement from the different pleadings fairly presents the issues to be determined.

Morton E. Stevens, of Fairbanks, for plaintiff.

Brown & Erwin and C. H. Clegg, of Fairbanks, for defendant Renza.

John L. McGinn, of Fairbanks, for other defendants.

LYONS, District Judge. The first serious question to be considered is: For whom did Renza purchase the property? Did he purchase the same for himself or as agent for Williams, and, if he purchased it for Williams, is his oral contract with Williams such a contract as the court can enforce, or is it void or nonenforceable under the statute of frauds? Second. If such a contract were enforceable, is the evidence such as to warrant the court in finding that such an agreement was entered into between Williams and Renza?

The plaintiff contends that the contract upon which he seeks to recover is not within the statute of frauds for the reason that Renza while advancing money which theretofore belonged to him, yet, under his agreement with the plaintiff, the money became the plaintiff's immediately upon its advancement as the purchase price of the property (that is, Renza loaned the purchase money to Williams, not delivering the same to Williams, but agreeing that the same should be a loan and should be charged against Williams immediately upon its appropriation for the purposes provided for by the contract); and the plaintiff contends that under such circumstances, if the title is taken in the name of the person who actually advances the money a trust results in favor of the person to whom the loan is made and to whose account the purchase price is charged.

If the testimony of the plaintiff supports or fully sustains the contention that such was the contract, then, under the law, a trust would result in favor of the person who actually assumed and became responsible for the purchase price. Our statute (section 1046, p. 355, Carter's Annotated Alaska Codes) provides:

"No estate or interest in real property, other than a lease for a term not exceeding one year, nor any trust or power concerning such property, can be created, transferred, or declared otherwise than by operation of law, or by a conveyance or other instrument in writing subscribed by the party creating, transferring, or declaring the same, or by his lawful agent under written authority, and executed with such formalities as are required by law."

But does the testimony of the plaintiff fully and fairly and definitely support his claim? When a court of equity is

petitioned to enforce a resulting trust in land growing out of an oral contract, the proof submitted, first, must be clear and convincing, and should be definitely portray and define the terms of the contract. As was said by the Supreme Court of the United States in Re Purcell v. Miner, 71 U. S. (4 Wall.) 517, 18 L. Ed. 435:

"A contract for the exchange of lands is as much within the statute of frauds as a contract for their sale, and a party seeking to enforce a specific execution of a parol contract for that purpose must bring himself within the same conditions before he can invoke the aid of a court of equity. The statute, which requires such contracts to be in writing, is equally binding on courts of equity as courts of law. Every day's experience more fully demonstrates that this statute was founded in wisdom, and absolutely necessary to preserve the title to real property from the chances, the uncertainty, and the fraud attending the admission of parol testimony. It has been often regretted by judges that courts of equity have not required as rigid an execution of the statutes as courts of law. Nevertheless, courts of equity have, in many instances, relaxed the rigid requirements, of the statute; but it has always been done for the purpose of hindering the statute made to prevent frauds from becoming the instrument of fraud. A mere breach of a parol promise will not make a case for the interference of a chancellor. It is plain that a party who claims such interference has the burden of proof thrown on him. He knows that the law requires written evidence of such contracts, in order to their validity. He has acted with great negligence and folly who has paid his money without getting his deed. When he requests a court to interfere for him, and save him from the consequences of his own disregard of the law, he should be held rigidly to full, satisfactory, and indubitable proof, first, of the contract and of its terms. Such proof must be clear, definite, and conclusive, and must show a contract, leaving no jus deliberandi or locus pœnitentiæ. It cannot be made out by mere hearsay, or evidence of the declarations of a party to mere strangers to the transaction, in chance conversation, which the witness had no reason to recollect from interest in the subject-matter, which may have been imperfectly heard, or inaccurately remembered, perverted, or altogether fabricated; testimony, therefore, impossible to be contradicted."

Counsel for the plaintiff contend that the contract upon which the plaintiff relies is not within that statute for the reason that, when one party advances the purchase price for land which is taken in the name of another, the law declares a trust in favor of the person whose money procured the title, not that the courts will enforce the specific performance of oral

contracts concerning lands, but that the courts will consider the circumstances and the action of the parties coupled with such oral agreement and prevent one from perpetrating a flagrant fraud upon another and claiming protection in the perpetration of such a fraud under the shadow of the statute of frauds. Neill v. Keese, 5 Tex. 23, 51 Am. Dec. 746; Sisemore v. Pelton, 17 Or. 546, 21 Pac. 667.

"A trust may result to him who pays the consideration for real estate, where the title is taken out in the name of another which is not within the statute of frauds, and it may be shown by parol testimony whose money was actually paid for it; but such trust must have arisen at the time the purchase was made, and the whole consideration must have been paid or secured at the time of, or prior to, the purchase price; and a bill in equity to enforce it must show without ambiguity or equivocation that the whole consideration appropriated to that share of land which the plaintiff claims by virtue of such payment was paid before the deed was taken." Ducie v. Ford, 138 U. S. 587, 11 Sup. Ct. 417, 34 L. Ed. 1091; Taylor v. Miles, 19 Or. 550, 25 Pac. 143; Snider v. Johnson, 25 Or. 328, 35 Pac. 846.

Second, before a court will declare a resulting trust in favor of the person who claims to have advanced or become responsible for the purchase price of real estate, it is necessary for such person to show that he did advance such purchase price or entered into a binding obligation at the time of the agreement to become responsible for the payment of the purchase price.

"A trust arising by operation of law must arise at the time of the transaction, and cannot be created afterwards." Taylor v. Miles, 19 Or. 550, 25 Pac. 143.

As was said by the Supreme Court of Arizona in Re Scribner v. Meade, 10 Ariz. 143, 85 Pac. 477:

"It is clear, from the evidence and the findings of the court, that there can be no recovery upon the theory of an express trust. It is also clear that there can be no recovery upon the theory of a resulting trust, for, in order for such a trust to arise upon a purchase, it is indispensable that the payment should have been made by the beneficiary, or that an absolute obligation to pay should have been incurred by him as a part of the original transaction of purchase, at or before the time of the conveyance."

Under the authorities, it therefore becomes necessary for the plaintiff to show, by clear and convincing proof, the terms

4 A.R.—11

of his alleged contract with Renza, and also that under such contract he, at the time of the said alleged contract, became liable to Renza for whatever purchase price the latter might pay for such property.

Does the evidence of the plaintiff, concerning the terms of the contract, comply with the requirements of the law as interpreted by the foregoing authorities? I think the question must be answered in the negative. In no one part of his testimony does the plaintiff state fully and clearly the terms of the alleged oral contract. It becomes necessary to search the record through nearly all of his testimony in order to ascertain what are the terms of the contract as viewed by the plaintiff; but a careful review of his testimony, even if the same is accepted as true, will not warrant the impartial reader in concluding that the plaintiff is claiming under a valid and enforceable contract. A fair interpretation of the plaintiff's testimony justifies substantially the following conclusions:

The plaintiff directed the defendant Renza to purchase the interest in the mine in controversy for the plaintiff, instructed Renza to advance the latter's own money, and agreed to reimburse Renza for the advances made seven or eight months thereafter; that Renza accepted said offer; and it was further agreed between them that Renza should take the title in his own name. What the purchase price should be was not agreed upon. No consideration for such advancement by Renza was agreed upon, except that Renza might retain whatever royalties the interest in the claim should yield during the time that Renza was to hold the legal title thereof. There was no loan made at the date of the agreement; in fact, under the terms of the contract, as recited by the plaintiff, there would have been no loan made, had Renza not been able to agree with the vendors concerning the purchase price. It must be apparent under the plaintiff's testimony, to any one that the money which procured the title to the property was Renza's money, until the purchase was completed and the purchase money delivered to the vendors. The alleged contract, therefore, amounts to no more than a contract on the part of Renza to purchase the property and reconvey it to the plaintiff. The

terms of the contract, as recited by the plaintiff, are very similar in principle to the alleged contract sued upon in the cause of Ryan v. Dunphy, 4 Mont. 342, 1 Pac. 710; Id., 116 U. S. 491, 6 Sup. Ct. 486, 29 L. Ed. 703. In that case the plaintiff sued the defendant upon a promissory note. The defendant admitted the execution of the note and its nonpayment, but on his cross-complaint alleged, in substance, the following facts:

"That in February, 1879, the appellant was negotiating for the purchase of certain placer mining ground, with the water rights, flumes, and appurtenances owned by and in the possession of certain persons, Rumsey and Embry; that about this time, at the request of the respondent, it was (in substance) agreed between the appellant and the respondent that the appellant was to effect the purchase of the above property upon the best terms possible, using his best judgment for the benefit of both parties; that the title thereto was to be taken in the name of the appellant, and that the respondent was not to be known in the transaction till the purchase was completed and the conveyances executed; that, when the appellant obtained a title to said property, he was to make to respondent a deed for the undivided one-third thereof, upon the execution and delivery of which the respondent was to pay to appellant the one-third of all moneys paid by him for such conveyances, and the one-half of all expenses paid out in and about the purchase; that on the 24th of February, 1879, the appellant obtained a deed from Embry for his interest in the property, the consideration therefor being $2,600; that on the 26th of July, 1879, the title from Rumsey for one-half of the property to the appellant also became perfected, and upon this day the appellant and wife executed a deed to respondent for an undivided one-third of said property, and the same was tendered to respondent, and demand made for the payment of $1,935.61, being the amount claimed by respondent on account of the purchase and expenses in relation thereto."

In passing upon the question involved in that case, the Supreme Court of Montana used the following language:

"It will be observed in relation to the agreement set forth in the answer, and which was sought to be proved by the question propounded, that the property, which was the subject thereof, was real estate; that the appellant was to obtain it in his own name and make the payment of the consideration therefor; that, when the purchase was completed, the respondent was to pay the appellant one-half the amount of the purchase money, who thereupon was to convey one-third of the property to respondent. The money so paid by appellant was his own money, and it cannot be considered as a loan or advance to the respondent. To take an agreement from the operation of the statute of frauds and establish a result-

ing trust, the purchase money must be the property of the party paying it at the time of the payment. The same rule prevails 'when the party taking the deed pays his own money therefor with the understanding * * * that it may afterwards be repaid and the land retained by him who sets up the trust.' The agreement was therefore a contract within the statute of frauds."

The Supreme Court of the United States, in passing on the question in the case last cited, used the following language:

"We cannot doubt that the contract which the defendant seeks to enforce is a contract for the sale of lands. According to the averments of the answer, it was this: The plaintiff, being in treaty for the purchase of the lands, agreed with the defendant to acquire title to the undivided two-thirds thereof in his own name upon the best terms possible, and, when he had acquired the title, to convey to the plaintiff, by a good and sufficient deed, an undivided third of the premises, for which the plaintiff promised to pay the defendant one-third of the purchase money and one-half the expenses incurred in obtaining the title. This is simply an agreement of the defendant to convey to the plaintiff a tract of land for a certain consideration. It therefore falls precisely within the terms of section 162, above quoted. It is a contract for the sale of lands, and not being in writing, signed by the vendor, is void."

The contract upon which the plaintiff relies in this case is analogous in principal to the one relied upon by the defendant in Re Dunphy v. Ryan. In this case there was no binding obligation incurred by Williams at the time of his alleged agreement with Renza. No amount was stipulated; neither had he any assurance that the said alleged contract would be consummated, and, if not consummated, there would be no loan. It is therefore apparent that, at the time of the making of the contract, no binding obligation on the part of Williams to pay the purchase price of the land had been incurred. Nor can it be considered that the terms of the contract were definite. Renza might have paid more for the property than Williams would consider the same worth. It is true Williams testifies that he advised with Renza from time to time, during the negotiations between Renza and the owners of the interest, concerning what purchase price should be paid, but according to their original contract there was no understanding as to what amount should be paid or as to what course Renza should pursue in securing the title to the property. So far as the

terms of the alleged contract are concerned, Renza might have purchased the property and paid far beyond its value in the judgment of Williams. Under such circumstances, can it be said that, if Renza did pay a purchase price far in excess of the value of the property, he could recover the same from Williams under that alleged contract? Plaintiff may contend that Renza could not in reason have such latitude, but the law obligates the one claiming any rights under such an oral contract to have its terms so definitely and clearly stated as to preclude any doubt of the mutuality of the obligations of the parties to such contract.

But the court is unable to accept the version of the plaintiff as to the understanding between himself and Renza, which he claims amounted to an enforceable contract. In the light of the testimony which exposes the characteristics and business tendencies of the plaintiff and the defendant Renza, the alleged contract between two such parties is, to say the least, unreasonable. Neither party has any written evidence whatever of the existence of such contract. No attempt was made by either party to procure a written acknowledgment in any form of the existence of such contract. No definite sum was fixed as the maximum of the purchase price, and even after the consummation of the three purchases by Renza, which occurred some time in March, 1909, no effort was made by either party to procure from the other any written evidence of the existence of such an agreement. After each purchase Renza handled the interests as though he was the absolute owner; he executed several leases as a co-owner of the property between the time of his purchase and the date of his sale to McDonald. When the owners of the Owl claim became involved in litigation with others, Renza was called upon by the attorneys of Williams to contribute his share of the expenses of such litigation. If Renza is the parsimonious man which the plaintiff claims, is it reasonable to suppose that he would be willing to contribute whatever was necessary toward the defense of a title in which he had no interest? Would not he have at least called upon Williams to reimburse him for such expenditures? Williams' counsel evidently believed, when they called upon

Renza to contribute his share of the expenses of such litigation, that he (Renza) was not only the owner of the legal, but also of the equitable, title of the property in controversy. Williams testified that Renza was afraid, at the time of the making of the contract, that the interest to be purchased would be insufficient to secure the payment of the purchase price. If such were the case, why should he make that additional loan of over $8,000 to Williams, when Williams was already in his debt to the extent of some $4,000? If the property was not reasonably valuable at that time, Renza would surely feel that the $4,000 already owed him by Williams was not amply secured. Is it reasonable that Renza, being a lover of money, as claimed by the plaintiff, should make such a loan and accept questionable security with the hope of only realizing royalties on that interest, which, at the time of the alleged contract, he had no reason to feel assured would be equivalent to the interest he was accustomed to collect? Renza took no other security, according to Williams, for the loan, except the interest purchased. It is true that Williams does testify concerning assignments of his royalties to other claims, but on cross-examination he is forced to admit that there was never any assignment made of any royalties or any other property to Renza for the purpose of securing the alleged loan.

The plaintiff indicates that during the month of May, 1909, he offered Renza $10,000 for the interest in the claim in controversy. Why should he make such an offer if the property already belonged to him? When he first heard of the negotiations between Renza and McDonald for the sale of the interest to McDonald, why did not Williams then demand his deed from Renza? It is true that he does state that he told Renza that the latter could not sell the same to McDonald, but in no place does he say that he demanded his deed from Renza, or demanded any acknowledgment from Renza that the property belonged to the plaintiff, and that Renza merely held the naked legal title in trust for the plaintiff. Plaintiff is a man of wide experience, whom the evidence shows has had considerable litigation during the past few years, and has frequently employed one of his present counsel as an advisor. It would seem

only reasonable that he would have advised this counsel concerning such purchase, and that the latter would have advised him to procure some written evidence which would protect him in the case of an attempted breach on the part of the defendant Renza. It is true Mr. Stevens did testify that the plaintiff at one time told him that Renza was negotiating for the purchase of the property for him, but the plaintiff may have made such a statement and have intended at the time only to convey the impression that Renza was purchasing the property at plaintiff's instance to prevent other parties, whom the plaintiff did not desire as co-owners, from acquiring an interest in the property. It is true Renza's testimony is not satisfactory in every respect, but he is a foreigner, who knows very little of the English language, and, from his demeanor on the stand, he seemed to be endeavoring to answer the questions fairly and to tell the truth, although there is considerable conflict between the testimony given in his deposition and the testimony given by him on the trial. But there is also some conflict in the testimony given in plaintiff's deposition and that given upon the trial. In his deposition he stated that, at the time of the making of the alleged contract between himself and Renza, he did not state to Renza for what purposes he desired the loan, but on the trial testified that he had told Renza, before the consummation of the alleged contract, the specific purpose for which he desired the loan. He also testified that he stated to Renza some time during October and November, 1908, that he would need money during the winter, and desired to contract a loan, or loans, from Renza, and the fact that he did secure various small loans from Renza during the succeeding winter is a strong indication of the circumstance, tending to prove that the loans referred to in all of his conversations were loans which he received to meet other obligations, and not the obligations which would be incurred by purchase of the property in controversy in this action.

The plaintiff has called witnesses who have testified that, in conversations with them, Renza asknowledged that he purchased the property for Williams. Renza states that he had conversations with such parties, but never stated to them that

he purchased the property for Williams, but had stated on several occasions that he had agreed with the plaintiff that the latter should have the first privilege to purchase in case of sale. The defendant Renza and the plaintiff had been friendly for many years, and the plaintiff was already an extensive holder in the Owl association placer claim. Renza testifies that he consulted the plaintiff frequently concerning the value of the property, and it is probable that the defendant Renza, in his inability to clearly express himself in conversation with different parties, may have left the impression that Williams was the owner of the property. But, whatever may be the truth with reference to the alleged contract, it is manifestly apparent that the plaintiff has not produced that character of proof concerning the existence of the alleged contract and its terms as to warrant a court of equity in holding that the defendant Renza merely holds the naked legal title in trust for the plaintiff. As has been said frequently by the courts, any one relying on such a contract must furnish convincing and satisfactory proof of its existence, and must show clearly and definitely the terms of such contract. The plaintiff, having failed to furnish such proof, cannot recover as against the defendant Renza in this action.

The next serious question to be considered in this case is: What are the rights of the defendant Renza as against the defendant McDonald? Renza claims that his contract with McDonald is merely a contract of option, and that McDonald forfeited all his rights under that contract by reason of his failure to pay the remainder of the purchase price on or before the 1st day of August, 1909. The defendant McDonald contends that the contract between himself and Renza is not a mere contract of option but is a contract for the sale of real estate, which contract obligated him to purchase the property and to pay the full price thereof, providing Renza was able to convey a good title to the same. Renza claims that he, under the contract, has a right to retain the $12,000 already paid, and also to hold the property and all the royalties derived therefrom, since his contract of sale with McDonald. It is true that the contract is styled an "option agreement," and the con-

tract in terms grants to McDonald the exclusive right of option to purchase the property, but the contract also provides as follows:

"The full purchase price of said property is eighteen thousand ($18,000.00) dollars, twelve thousand ($12,000.00) dollars of which said sum has this day been paid as above stated; the remainder, or six thousand ($6,000.00) dollars, the said party of the second part hereby binds himself and agrees to pay on or before the first day of August, 1910, to the party of the first part, his heirs, assigns or legal representatives at the office of the Fairbanks Banking Company at Fairbanks, Alaska, in lawful money of the United States."

An option contract is a contract which gives a party the right to purchase the thing to which the contract pertains. Usually, when applied to real estate, the party securing the option forfeits whatever he pays for the option in case he elects not to purchase the property, but does not incur any liability for breach of contract, for he has merely secured an option to purchase.

A contract for the sale of land is one where one party agrees to buy and the other agrees to sell, and each one would be held responsible in damages for a breach of the contract.

It is obvious that the $12,000 paid by McDonald to Renza was not paid for the option or the right to purchase, but it was part payment of the purchase price, and the defendant McDonald obligated himself to pay the remainder of the purchase price on or before a fixed date. Consequently it would seem, therefore, that the contract should be more properly styled a contract for the sale of land and not a mere option contract. But, in the view taken of the question involved by the court, it becomes immaterial whether it is considered an option agreement or a contract for the sale of land. The question which interests the court is: Will a court of equity, under the circumstances and the testimony, hold that McDonald, by failure to pay the remainder of the purchase price on the day stipulated, forfeited all of his rights under the contract? The bringing of this action by Williams certainly clouded Renza's title, and the amended complaint of the plaintiff states a cause of action. The defendant McDonald had no means of deter-

mining the validity of the plaintiff's claim, except by an actual trial. The defendant Renza, when he demanded the remainder of the purchase price, or, in default thereof, the return of his deed, did not tender to McDonald the amount the latter had already paid, nor does he make any such tender now. He wants the property and also the money already paid. It would seem to be a severe rule which would compel McDonald to pay the remainder of the purchase price and then to be compelled to litigate the controversy between Williams and Renza and incur the risk of Williams' prevailing, or else be compelled to forfeit the portion he had paid on the purchase price as well as the property. McDonald paid the money into the court at the time that the contract provided he should pay it to the bank. That act was certainly evidence of good faith. The defendant Renza did not make an appearance in the case for the purpose of contesting McDonald until some time after the testimony had been submitted regarding the controversy between the plaintiff and Renza. He explains, however, that he was misled by the defendant McDonald and McDonald's counsel, who at first acted for both McDonald and Renza. But the court is convinced that McDonald's counsel acted fairly with both McDonald and Renza when he advised Renza that, owing to the bringing of this action by the plaintiff, it would not be safe, nor would it be justice, to compel McDonald to pay the whole of the purchase price until the controversy over the title was determined by this court. But it is immaterial whether Renza's ignorance of our language and customs caused him to be misled with reference to the force and effect of McDonald's cross-complaint against him. In any event, he has suffered no injustice, for it would not only be inequitable but unconscionable to permit him, under the circumstances, to claim a forfeiture of the $12,000 already paid on the purchase price and yet hold title to the property. Equity will not encourage any such claim.

In Taylor v. Longworth, 39 U. S. (14 Pet.) 175, 10 L. Ed. 405, the court said:

"The present bill was brought in the succeeding year; and the question is whether, under all the circumstances of the case, Long-

worth is now entitled to a specific performance of the contract, upon his paying all the arrears of the purchase-money. Undoubtedly, if there were no grounds of excuse shown, accounting for the delay on his part to fulfill the contract, between September, 1822, when the ejectment was brought, and June, 1825, when the present bill was filed, there might be strong reason to contend that he was not entitled to a specific performance of the contract, even if some other relief, on account of his improvements, might be deemed equitable. But, in point of fact, the adverse claim of Chambers and wife to the property was made known as early as the year 1820, and was asserted by counsel, who were consulted on that occasion, to be valid. The claim was prosecuted (as has been already stated) by a suit in equity, brought in 1823, against Taylor, Longworth, and others, and remained undecided until the close of the year 1829. There is no pretense to say that this claim was not bona fide asserted, or that Longworth brought it forward to cover his own default. While it was known and pending, there is as little pretense to say that Longworth could be compelled to complete the contract on his side, or that he had not a right to lie by and await the decision of the title, which thus hung, as a cloud, upon that of Taylor. It is one thing to say that he might waive the objection and require a conveyance on the part of Taylor, and quite another thing to say that he was compellable, at once, to elect, at his peril, either to proceed on the contract or to surrender it. There is no ground to assert that, from the commencement of the present suit, Longworth has not always been ready and willing to pay up the arrears of the purchase money and to complete the contract. The proofs in the case are entirely satisfactory on this head. In our opinion, the lapse of time is fairly accounted for by the state of the title; and therefore Longworth has not been guilty of any delay, which is unreasonable or inexcusable. If an action has been commenced and a notice thereof filed apparently affecting the title of real property, and the complaint states a good cause of action, the title is not marketable, and the purchaser will not be compelled to accept it. He is not required to go outside and look up the evidence on which the action is based, and to determine whether or not it can be maintained." Simon v. Vandeveer, 155 N. Y. 377, 49 N. E. 1043, 63 Am. St. Rep. 683.

See Meyer v. Madreperla, 68 N. J. Law, 258, 53 Atl. 477, 96 Am. St. Rep. 536, wherein the court says:

"Mr. Pomeroy states the practice in such cases thus: 'In suits by a vendor the purchaser will not be forced to complete the contract unless the title is free from reasonable doubt. This requirement should be carefully distinguished from the objection that, as a matter of fact established by the proofs, the vendor has no title at all, or has only a partial or defective one—an objection which, if well founded, will, as a matter of law, either totally defeat a specific performance or render its performance partial. * * * The rule now to be discussed differs in every respect from this.

It assumes that the question whether the vendor's title is valid or imperfect is not definitely passed on by the court. If, however, there arises a reasonable doubt concerning the title, the court, without deciding the question, regards its existence as a sufficient reason for not compelling the purchaser to carry out the agreement.' "

"The vendor, in a contract to convey on payment of the purchase price, cannot declare a forfeiture for failure of the purchaser to pay, so long as he is himself unable to perform by tendering such a title as the contract requires," Higinbotham v. Frock, 48 Or. 129, 83 Pac. 536, 120 Am. St. Rep. 796.

Renza cannot give a good title to McDonald until the determination of this action. In Collins v. Delashmutt, 6 Or. 51, the Supreme Court of the state of Oregon, among other things, says:

"This theory is in accordance with the strict literal construction of the agreement; but the law requires something more than a bare literal compliance. It is now a settled principle of law, governing all executory contracts for the sale of real property, that there is an implied warranty on the part of the vendor that he will convey a good title. A contract to make a good and sufficient deed is not satisfied by the execution of a merely formal conveyance, which, on account of defects in the vendor's title, fails to pass a good title to the vendee."

Renza by his contract agreed with McDonald to make and execute a good and sufficient deed, conveying the premises to McDonald. He certainly was not in a position to deliver an unquestioned title until the determination of this action.

"He who seeks the aid of a court of equity must himself do equity. If plaintiff had tendered a deed such as the contract required, he should in addition have returned the notes given by defendant for the purchase money, and the amount paid him by defendant with legal interest, or at least have offered to pay and return them before he could be permitted to rescind. This seems to be the universal rule. The party against whom its rescission is sought must be placed in statu quo." Murphy v. Lockwood, 21 Ill. 611; Frink v. Thomas, 20 Or. 265, 25 Pac. 717, 12 L. R. A. 239; Howe v. Coates, 97 Minn. 385, 107 N. W. 397, 4 L. R. A. (N. S.) 1110, 114 Am. St. Rep. 723.

"It is a universal rule in equity never to enforce either a penalty or forfeiture. In the view of a court of equity, in the case of an agreement to sell land, the title being retained by the vendor as security for the balance of the purchase money, if the vendor obtains his money and interest, he gets all he expected when he entered into the contract. The remedy of the vendor in equity for

the persistent default of the vendee is to institute proceedings to foreclose the right of the vendee to purchase; the decree usually giving the latter a definite time within which to perform." Keller v. Lewis, 53 Cal. 113.

It is doubtful whether the defendant Renza is in a position to claim that McDonald has forfeited his rights under the contract, for the reason that Renza never notified McDonald of his intention to claim a forfeiture. He did frequently, so he testifies, demand payment of the remainder of the purchase price. If, under the circumstances, he was entitled to claim a forfeiture, he should have given McDonald notice that within a certain time he would claim a forfeiture, providing the purchase money was not paid.

"Under a bond for a deed providing that, in case of default in any stipulated payment, the vendor may declare the bond void and repossess himself of the premises, the vendor may cancel the contract upon reasonable notice, because of the cause of vendee's default, but such a contract is not self-executing, and cannot be summarily terminated by the vendor." Higinbotham v. Frock, 48 Or. 129, 83 Pac. 536, 120 Am. St. Rep. 796.

But even if it be conceded that Renza gave whatever notice the law requires, in order to forfeit McDonald's rights under the contract, still he was not in a position himself to comply with the contract in that he was unable to give such title as is contemplated by his agreement with McDonald, and McDonald was justified in refusing to pay the final installment on the purchase price until the final determination of this action.

The plaintiff should therefore take nothing by this action, and the defendant Renza should be compelled to specifically perform his contract with McDonald, and the defendant Fairbanks Banking Company directed to deliver the deed from Renza to McDonald, held by it in escrow, upon the payment by McDonald of the remainder of the purchase price, to wit, $6,000.

Let findings of fact, conclusions of law, and decree be entered in accordance with this opinion.